K. B. WARD, APPELLANT, v. CITY OF LINCOLN, APPELLEE.

FILED OCTOBER 22, 1910.    No. 16,718.

Municipal Corporations: PUBLIC IMPROVEMENTS: LIABILITY. L., a city of the first class, entered into a valid contract for the construction of a sidewalk, the cost thereof to be paid by a special assessment to be levied on the lots abutting the improvement; the sidewalk was constructed according to the contract, and the city levied a special assessment upon the abutting lots to pay for the same; thereafter the city failed and neglected to collect the assessment, and entered into an agreement with the owner of the lots by which it attempted to release them from the lien of the special assessment and caused the same to be canceled and discharged of record. *Held,* That such conduct on the part of the city rendered it liable in an action to recover the contract price of the improvement.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*H. Rosenthal,* for appellant.

*C. C. Flansburg* and *L. A. Flansburg,* contra.

BARNES, J.

This is an appeal from a judgment of the district court for Lancaster county sustaining a general demurrer to the plaintiff's petition and dismissing his action. The

only question presented for our determination is: Does the plaintiff's petition state facts sufficient to constitute a cause of action?

The petition alleges, in substance, that the defendant is a city of the first class existing under and by virtue of the statutes of Nebraska; that defendant then having power and authority to let contracts for the construction of sidewalks within its corporate limits, and to levy and assess taxes against the abutting real estate to pay for the construction of such sidewalks and collect said taxes, did on or about August 21, 1891, enter into a contract with one R. J. Gaddis for the construction of sidewalks in front of lots 7 to 12, inclusive, in block 4, Fitzgerald's second addition to the defendant city, and agreed to pay for said sidewalks from funds to be realized from assessments and special taxes on said lots; that Gaddis constructed the sidewalks according to his contract, and did all things required of him to be done in the performance of the same; that defendant, in accordance with its contract with Gaddis, issued to him six certificates, by which it certified that he was entitled to the several amounts mentioned therein, the same being the contract price of the sidewalk, with interest and penalties thereon, whenever said assessments should be collected, and reciting that the certificates were issued in accordance with an ordinance of the city of Lincoln, approved August 21, 1891, and in accordance with an order of the city council made December 8, 1891. The certificates were numbered, and each described the lot upon which the abutting sidewalk had been constructed. It was further alleged that the certificates were for a valuable consideration duly sold and assigned to the plaintiff, who is still the owner thereof; that the defendant levied and assessed taxes against the lots in question to pay for the construction of the sidewalks and for the payment of said certificates, with interest and penalties; that the taxes so levied and assessed remained unpaid, and became delinquent, and were included in and constituted a part of the amount of delinquent taxes declared by the

district court for Lancaster county to be due on said lots by a decree rendered on or about September 15, 1905, in a case wherein the state of Nebraska was plaintiff and Several Parcels of Land et al. were defendants, in a scavenger tax suit for the year 1905, and that said decree also contained the city and county taxes for more than four years; that in pursuance of the decree the county treasurer of Lancaster county on the 18th day of April, 1906, sold the lots in question to one A. C. Ricketts, the owner thereof, each lot selling for an amount which was less than the amount of the decree in said tax suit; that on May 1, 1906, and prior to the expiration of the time for premium bids on said lots, the defendant accepted and received in full settlement and satisfaction for the taxes and decree against said lots a sum of money on each of them in addition to the sum paid to the county treasurer at the time of sale, but which several sums so paid on each of said lots were less than the amount of taxes found due thereon by the decree; that the defendant entered into a stipulation recommending to the court that the decree theretofore entered against the lots in question be vacated and set aside, and that a new decree be entered against each of said lots in amount equal to the several sums so paid thereon, and that said sums be received in full payment and satisfaction for all assessments included in said tax suit; that the court entered a decree in accordance with said stipulation, and by reason thereof premium bids on the sales of the lots were prevented.

A copy of the stipulation was attached to and made a part of the petition, and so much of it as is material to this controversy reads as follows: "It is hereby stipulated by and between the plaintiff and A. C. Ricketts, the owner of the property hereinafter described, all of the said property being in Fitzgerald's second addition to the city of Lincoln, Lancaster county, Nebraska, that the default and the decree entered in the above action as to said several tracts hereinafter described be, and the same hereby is, set aside and vacated." Then followed a de-

scription of the property in question, together with other lots and blocks. The stipulation then continued: "It is further stipulated and agreed that, upon payment to the clerk of the district court within ten days from the entry of the decree herein of the several sums herein stipulated as due the plaintiff on said several tracts of land, all taxes and special assessments levied against said property for the year 1904, and prior thereto, shall be discharged and canceled of record, and the city treasurer and the county treasurer shall be directed and ordered, upon the payment of said sums, to cancel and discharge said taxes on the books of their respective offices." Then followed a copy of the decree, which in form and substance followed the terms of the stipulation.

It was further alleged that at the time the original decree was entered there were no unpaid taxes that had been levied and assessed on the lots in question prior to the special assessment against them for sidewalk purposes, except regular city taxes for the year 1891; that the amount of said regular city taxes for the year 1891 included in the decree was as follows: $13.17 each on lots 7, 8, 9, 10 and 11, and $14.17 on lot 12, and that the defendant, the city of Lincoln, received as proceeds of said sales for taxes, as finally consummated between it and the owner of the lots in question, for lot 7 $63.34, for lots 8, 9, 11 and 12 $66.57 each, and for lot 10 $66.02; that since such payment to the defendant and the receipt thereof the plaintiff presented his certificate to the city treasurer of the defendant city and demanded payment of the same, but payment was refused; that on June 30, 1909, plaintiff filed his claim in due form for the amount due on said certificates in the office of the city clerk of the defendant city, and presented the same to the city council of said city for audit and allowance, but that the city council has by inaction failed and neglected to allow or disallow said claim, though said council has had said claim a sufficient time to pass upon the same. Then follows an allegation of the amount due on the certificates; that the defendant, the

city of Lincoln, has failed, refused and neglected to pay the same and to provide any fund for such payment, and still refuses and neglects to pay or provide a fund for the payment of said certificates, and the petition thereupon concluded with a prayer for a judgment in the usual form.

Plaintiff contends that the defendant city, by failing, neglecting and refusing to provide a fund for the payment of its claim, and by permitting the owner of the lots specially benefited by the sidewalk improvements in question to pay off and discharge all taxes levied thereon, including the special assessments made against them to pay for the construction of the sidewalks, has rendered itself liable in an ordinary civil action to recover the amount due on his certificates. The defendant claims that the cost of the construction of the sidewalks could only be paid out of funds raised by a special assessment against the abutting real estate; that its agreement with the owner and the decree rendered thereon, by which the special assssments were released and satisfied of record, was legal and valid in all respects, and the plaintiff is therefore without any remedy whatsoever.

Upon the question thus presented the authorities are divided. We think, however, that we are committed to the rule contended for by counsel for the plaintiff. The contract with Gaddis for the construction of the sidewalks was valid, and one which the defendant city was authorized to make. In *Lincoln Land Co. v. Village of Grant,* 57 Neb. 70, it was said: "Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received." That case was followed and approved in *Rogers v. City of Omaha,* 76 Neb. 187, and again in *Rogers v. City of Omaha,* 82 Neb. 118, where it was said: "A warrant issued by a city in consideration of a demand which is a valid obligation payable out of its general funds is not invalidated by a recital, not contemplated by the statute, that it

shall be payable out of a special fund which the city is not authorized to create, or out of a special fund which the city may lawfully create, but the failure to create which is due solely to the fault or negligence of the city." In that case, discussing the question involved in this inquiry, it was said: "It is insisted by defendant that, the warrants in question having been issued against a fund which never was in fact created, the warrants themselves were void and of no force or effect whatever. This contention has already been decided adversely to defendant in *Abrahams v. City of Omaha,* 80 Neb. 271, where we held: 'A warrant issued by a city in consideration of a demand which is a valid obligation payable out of its general funds is not invalidated by a recital, not contemplated by the statute, that it shall be payable out of a special fund which the city is not authorized to create, or out of a special fund which the city may lawfully create, but the failure to create which is due solely to the fault or negligence of the city. A warrant issued by the proper authorities of a city in consideration of a valid indebtedness against it is a written acknowledgment of such indebtedness and promise to pay it.' That the defendant, through its mayor and council, had full power and authority to enter into the contracts for the sidewalks cannot be seriously questioned, but the defendant contends that, inasmuch as the contract itself provides that the work done by the contractor shall be paid for in warrants drawn against a special fund to be created by an assessment upon the lots, and that the contractor agreed to receive such warrants in full satisfaction and payment for all work done and all material furnished by him under his contract, and no fund ever having been created, the city is relieved from all liability. This will not do. The law is well settled that, when a municipal corporation enters into a contract of this character, it thereby agrees to create the special fund, by valid assessments, and that, failing to do so, it is liable generally. It will not do to say that a city may contract for the expenditure of large sums of money and material and a large

amount of labor in constructing valuable improvements for the city, and agree to pay for such improvements out of a fund to be created by a special assessment, and then escape all liability by never creating the fund, or, if it attempts to create such a fund, by proceeding so irregularly that the assessments when levied cannot be enforced. No such dishonesty would be tolerated in an individual, and we see no reason why it should be in the case of a municipal corporation. As said by the supreme court of California in *Pimental v. City of San Francisco,* 21 Cal. 351 : 'The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property, which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. *Argenti v. City of San Francisco,* 16 Cal. 255. The legal liability springs from the moral duty to make restitution: And we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics; its command always is to do justice.' In *Pine Tree Lumber Co. v. City of Fargo,* 12 N. Dak. 360, it is said: 'The city, as we have seen, is provided with the means of fully protecting itself against expense in the making of special improvements. Any payments made upon its contracts for paving should be paid out of the funds realized from the special assessments; and, if the city exercise the powers given it, the general taxpayer cannot be burdened at all with the cost of the improvement. If, however, the city council fails to take advantage of the means provided to realize upon special assessments the cost of the improvement, as between the city it represents and the contractor, the consequences of the neglect should fall upon the city.' "

*O'Hara v. Scranton City,* 205 Pa. St. 142, was a case

where the plaintiff sued the city for the price of construct-ing a sewer. There was a city ordinance which provided that the contractor should not receive any sum in excess of the amount actually received by the city from the assess-ment for the sewer. The contract contained this clause: "It is expressly understood that the fund for the payment of the above contract price is to be derived from assess-ments upon the city and abutting property owners ac-cording to benefits, and as to assessments upon abutting properties the city is liable to the contractor only for amounts actually collected." The city solicitor failed to file liens within the time prescribed by the ordinance, whereby many assessments were lost to the contractor. The court in construing the ordinance said: "It may be that as between the city and her solicitor the default should be charged to the solicitor; but if so the city must indemnify herself at the expense of him and his sureties, and not at the expense of O'Hara."

In the case of *Lyon v. District of Columbia*, 19 Ct. Cl. 649, the claimant was the owner of three tax-lien certifi-cates, which were liens upon certain lots of land in Wash-ington for the amount therein stated as overdue and un-paid taxes. The owners of the land in each case proved to the district commissioners that the assessments upon their land, for which said certificates were issued, were erroneous, in that they were for too large an amount. The district commissioners, finding that the lot owners had been assessed too much, reduced the assessments and discharged the liens on the land by the payment of the reduced amount. The court said: "When the commis-sioners destroyed the claimant's lien by settling with the lot owners for amounts less than the claims which they had sold, that was an implied obligation to pay him the difference."

We find that the cases of *Heller v. City of Garden City*, 58 Kan. 263; *City of Belton v. Sterling*, 50 S. W. (Tex. Civ. App.) 1027; *O'Brien v. Police Jury*, 2 La. Ann. 355; *Jones v. City of Portland*, 35 Or. 512; *Commercial Nat.*

*Bank v. Portland,* 24 Or. 188; *Kearney v. City of Coving-ton,* 58 Ky. 339; *Bucroft v. City of Council Bluffs,* 63 Ia. 646, and *Barber Asphalt Paving Co. v. City of Denver,* 72 Fed. 336, to a greater or less extent support the rule above stated. On the other hand, counsel for the city in an elaborate and well-written brief have cited many authorities, some of which seem to support their contention. But, in view of our former decisions in which we think we are fairly committed to the more just and equitable rule contended for by the plaintiff, we are of opinion that the petition was sufficient in form and substance to resist a general demurrer.

The judgment of the district court is therefore reversed and the cause is remanded for further proceedings.

REVERSED.

ROSE, J., dissenting.

My understanding of the facts pleaded by plaintiff and of the law applicable thereto leads me to dissent from the opinion and the conclusion of the majority. The petition does not contain a copy of the contract between the city and the contractor who constructed the sidewalks. It does allege, however, that the contractor, R. J. Gaddis, agreed with the city to construct sidewalks in front of lots 7 to 12, inclusive, in block 4, Fitzgerald's second addition, and that the city "agreed to pay for said sidewalks *from funds to be realized from assessments and special taxes on said lots.*" If this allegation left any doubt as to the agreement that the contractor was to be paid from funds arising from special assessments against the lots, the matter is made clear by the following certificate which is copied from the petition: "No. 121. $17.08. Office of City Clerk, Lincoln, Neb., Dec. 8, 1891. City Treasurer of Lincoln, Nebraska: This is to certify that R. J. Gaddis, or order, is entitled to seventeen and 8-100 dollars, assessments or special taxes for sidewalk construction on lot 7, in block 4, Fitzgerald's second addition, in the city of Lincoln, Nebraska, together with the interest and penal-

ties thereon whenever said assessment, penalty and interest shall be collected, and you will pay the same to the order of R. J. Gaddis on the presentation of this certificate with proper identification, after said assessment has been collected. This certificate is issued in accordance with an ordinance of the city of Lincoln, approved August 21, 1891, in accordance to an order of the city council made Dec. 8, 1891. No. 1620. D. C. Van Duyn, City Clerk."

The petition shows on its face, when this certificate is considered, that the contractor agreed to construct the sidewalks and to receive his pay from funds to be realized from special assessments against the lots. In thus providing for payment of the contractor, the city adopted the only means created by law for discharging the obligation. Its charter gave it no authority whatever to pay for the sidewalks described in the petition with funds raised by general taxation. In dealing with the officers of the city, the contractor was bound to know the limitations of their power. They had no authority as representatives of the city to guarantee the payment of his claim, or to assure him that the taxes would be sufficient to pay it, or that any deficiency would be made good by general taxation, or that the city would exercise extraordinary diligence in collecting special assessments from the lot owners, or that he would be relieved from the ordinary vigilance imposed by law upon lienors in collecting their claims. Where a city is not authorized by its charter to use its general funds for the purpose of constructing sidewalks, the law, as generally announced, does not imply an agreement to do so, and a rule of general acceptation limits a contractor to specific or special funds where, under authority of law, he contracts with reference thereto. *Lake v. Trustees of Williamsburgh*, 4 Denio (N. Y.) 520; *City of Huntington v. Force*, 152 Ind. 368; *Reock v. Mayor*, 33 N. J. Law 129; *Finney v. City of Oshkosh*, 18 Wis. 220; *Peake v. New Orleans*, 139 U. S. 342; *City of Alton v. Foster*, 74 Ill. App. 511; *Farrell v. City of Chicago*, 198 Ill. 558; *Craycraft v.*

*Selvage,* 10 Ky. 696; *City of Greencastle v. Allen,* 43 Ind. 347; *Goodrich v. City of Detroit,* 12 Mich. 279; *North-western Lumber Co. v. City of Aberdeen,* 20 Wash. 102; *Wilson v. City of Aberdeen,* 19 Wash. 89. The doctrine that a contractor is limited to the specific fund with reference to which he contracts is especially applicable to agreements for the construction of sidewalks. His judgment as to whether the property will sell for enough to pay the tax liens ought to be as good as that of the city officers, and he has the privilege of bidding it up to its full value. Like other creditors, he takes his chances on the sufficiency of his security. Ordinary business sagacity would lead him to consider in advance the location, character and value of the lots. These are matters of which the citizens generally will know little, even if they are required, after paying for their own sidewalks, to pay also for like improvements for the benefit of others, when the city is held liable to the contractor for the full amount of his claim. If the limitations solemnly imposed by the legislature for the protection of the public must yield to "the common obligation to do justice which binds individuals," still a valid contract honestly and fairly made pursuant to the terms of a city charter ought to settle the question of ethics between the parties. Civic integrity does not necessarily bind a city to insure its contractors against loss. The state constitution is a fair measure of public rectitude, and it declares: "The legislature shall never grant any extra compensation to any public officer, agent, servant, or *contractor after the services shall have been rendered or the contract entered into.*" Article III, sec. 16. A city must make estimates, levies and appropriations and contract in relation thereto. It can only pay its obligations by taxation or other limited means of raising revenue, and persons dealing with it should observe these limitations. Plaintiff's petition, as already stated, fairly shows that the contractor agreed to build the sidewalks and to wait for his pay until "after said assessment has been collected." Plaintiff is not the contractor, but is the holder of the lat-

ter's certificate. Is he not required, like other lienors, to be vigilant? It has been held that he must see that the officers perform their duty even to the extent of applying for mandamus. *City of Greencastle v. Allen*, 43 Ind. 347. I do not observe anything in his petition to indicate that he has been diligent in his own behalf, though he does state that the city officers properly levied the necessary taxes. As I understand the petition, it fails to show that the amount realized by taxation was less than the full value of the property, or that he would have increased such amount by bidding, had he been given an opportunity to do so, or that by stipulation or otherwise plaintiff was injured through the acts or negligence of the officers. The stipulation, however, as pleaded in the petition demurred to, indicates that the property could not have been sold for more than the sum realized, since the following is indorsed thereon: "On recommendation of James A. Sheffield, city assessor, and believing this will secure the city as much as can be obtained for the foregoing property, I sign this stipulation. E. C. Strode, City Attorney."

According to my understanding of this controversy, the doctrine announced in the cases cited by the majority should not be applied here. In my opinion, the demurrer to the petition was properly sustained and the judgment should be affirmed.

SEDGWICK, J., dissenting.

The act of 1889 (laws 1889, ch. 14, p. 191), provided that, when sidewalks and other such improvements were authorized to be paid for by special assessments, they should "in the first instance be paid for out of the general fund." In 1891 this section was amended. Laws 1891, ch. 8, p. 144. The provision that these improvements should be paid for out of the general fund was omitted, and in lieu thereof it was expressly provided that "the contractor shall receive his pay for such work from the assessments against the real estate in front of which

said work was done," and that "the city treasurer of said city shall pay over to such contractor * * * all assessments or special taxes against such real estate collected, together with the interest and penalty collected thereon, which shall in each case be full compensation to such contractor for any work so done under his said contract." This amendment took effect April 9, 1891, and it is beyond question that the legislature by this amendment intended to change the rule that had obtained and to withdraw from the city council the authority to pay for such improvements from the general fund. For this reason, I concur in the dissenting opinion of Judge ROSE.