## CITY OF LAPORTE *v.* AHLBORN.

[No. 23,695.    Filed January 25, 1922.]

1.  CORPORATION. — *Dissolution.—Contracts.—Assignment.—Statutes.*—Where a corporation, after having fully performed its contract with a city for the construction of a public improvement, was dissolved, one succeeding to its matured right of action on the contract, as provided by the statute (§§4084b, 4084d Burns 1914, Acts 1913 p. 634, §§2, 4) authorizing its dissolution, was entitled to maintain an action to enforce that right notwithstanding a provision in the contract that there could be no assignment thereof without the consent of the city's board of public works.   p. 489.

2.  APPEAL.—*Review.—Ruling on Demurrer to Complaint.—Construction of Complaint.—Presumptions.*—A complaint being capable of a construction which makes it sufficient to withstand a demurrer, it will be assumed on appeal that the court adopted that construction when it overruled the demurrer.   p. 489.

3.  APPEAL. — *Review.—Ruling on Demurrer to Complaint.—Waiver of Error.—Objection Not Presented to Trial Court.*—Objections to the sufficiency of the complaint which were not presented to the trial court by the memorandum accompanying the demurrer are waived.   p. 490.

4.  MUNICIPAL CORPORATIONS. — *Public Improvements.—Action against City on Contract.—Complaint.—Sufficiency.—Authority of Officers to Execute Contract.—Statutes.*—A complaint alleging that defendant city entered into a contract for a public improvement set out in the complaint, and purporting to have been executed in its name by its officers, is not required to state facts showing that authority had been given such officers, since, if the contract was not lawfully executed, pursuant to authority

duly conferred, that fact is a. matter of defense, which, under §370 Burns 1914, §364 R. S. 1881, is to be set up by a verified plea. p. 490.

5. MUNICIPAL CORPORATIONS.—*Public Improvements.—Release of Property Subject to Assessment.—Evidence.—Sufficiency.*—In an action against a municipal corporation on a public improvement contract in which liability was predicated on the alleged release by the city of property subject to assessment, and that by reason thereof the contractor was unable to collect part of the contract price of the work, evidence *held* insufficient to show the city's liability within the rule that where a city, after letting a contract for a public improvement to be paid for by assessments on private property to which such property is liable, and after a large part of the expense of making the improvement has been incurred by the contractor, does such acts without the consent of the contractor as operate to release from liability part of the property subject to assessment, and thereby makes it impossible for the contractor to collect part of the contract price for his work, the city will be liable to him for the amount thus made uncollectible. p. 491.

From Porter Superior Court; *H. H. Loring,* Judge.

Action by William Ahlborn against the city of Laporte. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Frank J. Conboy, Philo Q. Doran, Lee L. Osborn, H. W. Sullivan* and *Elias D. Salsbury,* for appellant.

*John Gavit, Grant Crumpacker, E. E. Weir, Earl Rowley* and *Lemuel Darrow,* for appellee.

EWBANK, C. J.—The substance of the complaint was that the William Ahlborn Construction Company, entered into a contract with the appellant city to fill, grade and pave a street at the expense of the abutting lands, and of an interurban street railway which was to occupy the center of the street and pay for the work done between its tracks and one foot on either side; that the abutting real estate and the street railway respectively were liable for payment of parts of the cost of such improvement if the appellant city had performed its duty as to imposing such liability. That the appellant city

undertook to do such acts as were required by law to impose upon the abutting real estate, and the street railway, a lien for the cost of the improvement; that after the fill had been made and the greater part of the expense of making the improvement incurred by the contractor the city granted the street railway permission to lay its track in the street outside of the paved portion, and did such acts as made it impossible for the contractor to enforce payment of any part of the expense by the street railway, and thereafter assessed the entire cost against the abutting real estate; that part of the real estate so assessed consisted of swamp land that was without value, and by reason of that fact the contractor was unable to collect a part of the money for which the appellant city had undertaken to impose a lien upon the property of the street railway company; that if the city had done as it undertook to do, and had not done the alleged acts by which the street railway was authorized to lay its tracks outside the paved part of the street and was released from any obligation to pay for the improvement, the contractor could have enforced payment by the street railway of a large sum which such acts of the city have made it impossible to collect.

And that after the work was done, and "after there had accrued to the William Ahlborn Construction Company the moneys due and owing to it from the defendant * * * all the debts of every kind and character owing to any persons, firms or corporations from the said William Ahlborn Construction Company were duly paid and satisfied, and that on or about the 21st day of January 1916, the said William Ahlborn Construction Company, a corporation, gave notice to and legally dissolved, and that on the 17th day of February, 1916, the William Ahlborn Construction Company ceased to exist as a corporation, and the plaintiff (appellee) succeeded

to all of the rights and assets of said corporation, including the claim for work and labor performed for the defendant under the contract hereinafter recited;" and that on or about said date of February 17, 1916, "said corporation by consent of all stockholders and by virtue of a duly authorized transfer, assigned to plaintiff (appellee) all of the assets, choses in action and moneys due and owing to the said William Ahlborn Construction Company."

There is a further allegation that the contract as actually made contained a provision that "the track of said railroad shall be laid in the center of Madison street from Lake street to Weller avenue," but that "by mutual mistake of the parties thereto said contract, without said provisions having been incorporated therein, was executed, delivered and accepted."

After a demurrer to the complaint for alleged want of facts sufficient to constitute a cause of action had been overruled, and appellant had reserved an exception, the cause was put at issue by a general denial, and by a reply of denial to paragraphs of special answer alleging that no officers of the appellant city had authority to execute the alleged contract on its behalf, that the demand sued on was fully paid and satisfied before the commencement of the action, and that appellant city never executed the contract sued on, the latter paragraph being sworn to by the mayor.

There was a general finding in favor of the appellee, on which judgment was rendered for $7,650 and costs. The appellant moved for a new trial for seventy-two reasons, of which all have been waived except the specifications that the decision is contrary to law, that it is not sustained by sufficient evidence, and that the assessment of the amount of recovery is erroneous, being too large. The overruling of the demurrer to the complaint and of the motion for a new trial are assigned as error.

The sufficiency of the complaint is first challenged on the ground that, as appellant insists, the assignee of such a contract cannot recover thereon in an action to which his assignor is not a party, the contract providing that "no assignment of this contract shall be made to any party without the consent of said board of public works in writing," and the giving of such consent not being alleged. But the allegations as to the dissolution of the corporation, and that appellee thereupon succeeded to all of its rights and assets, on the same day on which they are alleged to have been assigned to him, will bear the construction that he stood in such a relation to the corporation that when it ceased to exist all of its property and rights vested in him under the law which authorized its dissolution. §§4084b, 4084d Burns 1914, Acts 1913 p. 634, §§2, 4. If the contract had been fully performed on the part of the construction company, as the complaint alleged, and afterward the company was dissolved and ceased to exist, and appellee succeeded to its matured right of action on the contract, as provided by the law which authorized its dissolution, he would be entitled to maintain an action to enforce that right the same as the corporation would have been if it had not been dissolved. And the language of the complaint being capable of a construction which makes it sufficient to withstand a demurrer on that theory, we may assume that the trial court adopted that construction when it overruled the demurrer.

Appellant urges that the complaint is insufficient because "the resolution of the board of public works, upon which the contract was based, is not made a part of said complaint."

Argument is offered to the effect that the contract as pleaded contains such a reference to the ordinance as serves to incorporate its provisions in the contract, and

therefore it must be set out to show what the contract was. But of the fifty-nine specifications which accompanied the demurrer none pointed out any such a defect in the complaint, and objections to the complaint which were not presented to the trial court are waived. It is also urged that without an ordinance conferring authority, the officers of the city could not make a valid contract. But where it is alleged that the defendant corporation entered into a contract which is set out in the complaint and purports to have been executed in its name by its officers, the complaint is not required to state facts showing that authority had been given to the officers who signed on its behalf. If the contract was not lawfully executed, pursuant to authority duly conferred, that fact is matter of defense to be set up by verified plea, as was done in this case. §370 Burns 1914, §364 R. S. 1881.

3, 4.

As has been stated above, the complaint seeks to recover because of alleged acts of the city whereby a part of the property liable to assessment for the improvement is alleged to have been released from such liability after the contractor had bound itself to do the work and after it had incurred a large expense in making the fill for the street. Authorities which hold that inability of the contractor to collect assessments because of low values of the property assessed is not sufficient to create a liability on the part of the city do not control in such a case. The complaint sufficiently avers that neither the appellee nor the contractor was paid for that part of the improvement for which it is alleged the street railway would have been liable to assessment, and that the acts of appellant complained of prevented appellee from recovering the amount due for such work, to his damage in the sum of $25,000.

There was no motion to make the complaint more specific. And so far as appellant has pointed out what it

regards as defects in the pleading we do not
5. think it insufficient to withstand a general de-
murrer. Many authorities hold that where a
city, after letting a contract for a public improvement
to be paid for by assessments on private property to
which such property is liable, and after a large part
of the expense of making it has been incurred by the
contractor, does such acts without the consent of the
contractor as operate to release from liability part of
the property subject to assessment, and thereby makes
it impossible for the contractor to collect part of the
contract price for his work, the city will be liable to
him for the amount thus made uncollectible. *City of
Dunkirk* v. *Wallace* (1898), 19 Ind. App. 298, 304, 49
N. E. 463; *City of Newcastle* v. *Dingle* (1916), 185 Ind.
626, 114 N. E. 221; *McEwan* v. *Spokane* (1896), 16
Wash. 212, 47 Pac. 433; *Denny* v. *Spokane* (1897), 79
Fed. 719, 25 C. C. A. 164; *District of Columbia* v. *Lyon*
(1896), 161 U. S. 200, 16 Sup. Ct. 450; *Heller* v. *Garden
City* (1887), 58 Kans. 263, 48 Pac. 841; *Stevens* v.
*Spokane* (1895), 11 Wash. 41, 39 Pac. 266; *O'Hara* v.
*Scranton* (1903), 205 Pa. 142, 54 Atl. 713; *Dime Dep.
& Bank* v. *Scranton* (1904), 208 Pa. 383, 57 Atl. 770;
*City of Houston* v. *Potter* (1906), 41 Tex. Civ. App.
381, 91 S. W. 389; *Ward* v. *City of Lincoln* (1910), 87
Neb. 661, 128 N. W. 24, 32 L. R. A. (N. S.) 163; *Eilert*
v. *Oshkosh* (1861), 14 Wis. 637. Appellant has not
challenged the rule of law declared by the foregoing
decisions, on which appellee relies, and we shall assume
for the purposes of this case that the law is as we have
stated it.

But under its assignment that the trial court erred
in overruling the motion for a new trial appellant in-
sists that there was no evidence bringing the case at
bar within that rule of law.

In this contention we think appellant is correct. The

uncontradicted evidence shows that the preliminary resolution for making the improvement in question was adopted June 24, 1912, and was confirmed without modification July 18, 1912, and that final action thereon was taken September 6, 1912; that at that time and thereafter until May 18, 1914, there was no street railway in that part of Madison street for which the contractor failed to receive payment; that some years before the street railway company had been granted a city franchise to build its railway along Madison street, as then located, the franchise ordinance providing as follows (our italics) :

"Sec. 4. The said track shall be laid along the *center of the street, except when otherwise directed by the city council,* and in such manner as to conform to the grade of such streets as established by the city. If at any place any street or streets or avenues shall not be up to grade, that part occupied by the track and for a sufficient distance on either side to make the street passable must be brought up to grade by and at the expense of the grantee or its assigns. Where streets are paved, said grantee or its assigns shall pave between the rails and twelve inches outside the rails with the same materials * * * and whenever the city shall pave or repave any streets upon which the track of said company is laid, then said company shall pave * * * the space between the rails and twelve inches beyond the rails at the same time * * * and whenever the tracks of the grantee shall be laid outside the curb line of any paved street when said track is put down, and the city shall thereafter improve said street by repaving or otherwise, said grantee may be required by said city to remove and relay its said tracks in the center of the streets to be improved, prior to the making of such improvements," etc. That this ordinance had been accepted in 1908 by the street railway company, which

had then laid its tracks along the west side of Madison
street a distance of 500 feet at the south end of the pro-
posed improvement, and in the center of said street, as
then located, from Lake street to near the Pere Mar-
quette railroad, a distance of about 1,400 feet, and at the
east side of said street as then located from there to the
junction of Weller and Truesdale avenues, a further
distance of about 700 feet, and had maintained them
there without change of location until after May 14,
1914; that Madison street from Lake street to the Pere
Marquette railroad and thence to Weller avenue had
been ordered changed to a new location, and as de-
scribed in said preliminary resolution and in the
ordinance for its improvement thereafter adopted, it
turned west at Lake street and then north, and ran over
a new route from Lake street to Weller avenue at a
distance of 200 to 400 feet west of the old line of Mad-
ison street on which the street railway tracks were lo-
cated; that the change in the location of Madison street
was ordered in a proceeding instituted in April and con-
cluded in October, 1911, and that neither the street rail-
way company nor its tracks were mentioned in the
resolution for changing the street nor in any of the
recorded proceedings for that purpose, and the street
railway company did not appear thereto; that from a
point 400 feet north of Lake street for a distance of
about 1,200 feet to Weller avenue, the new line of Mad-
ison street extended across low, marshy ground that was
formerly the bottom of a lake, and the improvement
included building an embankment ten to fifteen feet
high and sixty feet wide, at the top, across this low
ground and paving the roadway to the width of forty
feet along the center of this embankment; that the pre-
liminary resolution for making such improvement was
numbered 62, 1912, and was adopted June 24, 1912,
and provided as follows:

"The cost of said improvement, except street and alley intersections, including the following shall be assessed on real estate abutting on said street to be improved, and on the property within 150 feet of the line of the street to be improved, and upon the city of La Porte, all according to the method provided * * * in An Act Concerning Municipal Corporations, approved March 6, 1905 * * * Under no circumstances shall the city of La Porte be held responsible for any sum due from property owners for said work or for the collection of the same or for the payment of any bond, bonds, certificate or certificates issued to said contractor in payment for such work, except for such above moneys as said city is by said above entitled act and provisions of all acts amendatory and supplemental thereto required to pay." That said preliminary resolution did not mention nor refer to the street railway company nor its tracks, nor to the matter of paving between its tracks. That upon due notice remonstrances were duly heard, and on July 18, 1912, the board of public works of the city of La Porte made an order "that the improvement resolution be in all things confirmed without modification, and that the improvement therein contemplated be made, and that notice be given to bidders."

That neither the confirmatory resolution nor the notice given to bidders contained any reference to the street railway or its tracks, or to paving between its tracks, and the street railway company did not appear in said proceeding. That the company under which appellee claims submitted a bid for the work which recited that it should be done "according to the forms of improvement resolution No. 62, 1912, adopted June 24, 1912." That on September 12, 1912, the board of public works in regular session approved a written contract,

signed by the mayor and one of the members of said board and attested by the city clerk on behalf of the city, and by the appellee as president of the construction company. That this written contract said nothing about any part of Madison street on which there were street railway tracks nor on which such tracks were to be laid, nor whether the tracks (if any) were to be in the middle of the street or on some other part of it, but did provide that all the work of grading and paving should be completed by August 1, 1913, and "that the kind of pavement between the rails of the street car track and one foot on the outside of either rail thereof, which said track belongs to the Chicago, South Bend and Northern Indiana Railroad Company, shall be paved with Metropolitan Paving Brick * * * according to the plans and specifications heretofore adopted * * * that said railroad company shall be responsible for any pay for said work between its rails and one foot on the outside of either of said rails, and that the property abutting on said street or the owners of the same shall in no wise be liable for the cost of that part of the work herein designated as brick pavement between said rails and one foot on either side of the outside of either rail of said track * * * That the said second party (city) shall be liable to the said first party for the contract price of such improvements whether represented by bonds or assessments, to the extent of the moneys actually received by said city from assessments or bonds growing out of such improvement and for no more, except street intersections."

That blue prints of the course of the proposed improvement and of a profile of the cuts and fills to be made were prepared by the city engineer under date of June 24, 1912, being the date when the preliminary resolution was adopted, and that none of said blueprints

marked the street railway tracks as located within the part of the street to be paved, nor mentioned the street railway or the street railway company.

That the resolution of the board of public works authorizing the execution of said contract on behalf of the city of La Porte provided "that a contract be entered into with William Ahlborn Construction Company according to improvement resolution No. 62, 1912, adopted by the board of public works on the 24th day of June, 1912."

That at the time said improvement resolution was adopted and confirmed, and at the time said written contract was signed and approved, there were no street railway tracks along the center of that portion of Madison street which was ordered to be improved, but said tracks crossed the line of the pavement at the extreme south end, and extended northwestwardly along the west side of said street, outside of the part ordered to be paved, about 500 feet, and then ran diagonally across the space ordered to be paved, and thence along the old location of Madison street which had been ordered vacated, part of the way in the center of that street and part of the way at the east side, until it had passed the south line of Weller and Truesdale avenues, when it again crossed diagonally over a corner of the space proposed to be paved, near the east line of Madison street. The following map will explain the course followed by the tracks at that time, the location of the pavement, and the final location of the street railway tracks as afterward relocated.

No ordinance was passed nor order made for the location of the street railway tracks upon the new route of Madison street where the contract required an embankment to be built across the low ground, nor for their relocation in the center of any portion of the street, on which appellee's company had undertaken to

lay a pavement, until more than a year after the company and the city had signed said written contract, and it had been approved by resolution of the board of public works, nor until after the date fixed by the contract for completion of the entire work of constructing the improvement.

But on September 22, 1913, a year and ten days after the contract had been approved, and more than fifty days after the date fixed by the contract for the completion of the pavement, the common council enacted and the mayor signed ordinance No. 155, which provided that on or before December 1, 1913, the Chicago, South Bend and Northern Indiana Railway Company

was "authorized and required" to remove its tracks from the old line of Madison street, previously vacated, and to lay its tracks, install its equipment and operate its road on Madison street as then laid out and established, "pursuant and subject to the provisions of its franchise." That nothing was done by the owners toward removing the street railroad tracks to the new location until after May 18, 1914, on which date the ordinance No. 155, was repealed, and a resolution was adopted by the common council and approved by the mayor by which it was ordered that the street railway track should be removed from the old location and relocated "on Madison street as now straightened, established and laid out" across said low ground, along the west side of the street, outside of the west curb line as established by the improvement resolution under which appellee's company improved the street, and that the work of removal should be completed not later than July 15, 1914, and if the street was not in condition to receive the tracks by that time, not later than ten days after it should be put in condition. That the contractor worked at grading the new part of the street in 1912, and finished constructing the fill in the spring of 1913, and let it settle all summer and refilled it during the summer of 1913, and then asked the street railway company to move its tracks over upon the new street as so filled about thirty days before the ordinance No. 155 was enacted in September, 1913. That there were no street railway tracks along the new location of the street when the fill was made. That on May 23, 1914, five days after the repeal of ordinance No. 155 and the passage of the ordinance providing that the street railway tracks should be removed to the new Madison street and laid along the west side of the street outside the curb, the construction company wrote a letter to the board of public works stating that the location of the

street railway tracks at the side of the street would cause the brick pavement to settle and crack, which would not occur if they were laid in the center of the street, and that the construction company was proceeding and intended to complete the work as soon as possible, but protesting against the city "permitting a change of location of said street railroad track, and insisting upon the right to be relieved from liability under the bond (for maintenance) if filed, providing that defects which may appear in said pavement are caused by the operation of the street railroad company's cars over its track along the side of the roadway." That after the improvement was completed it was accepted by the city, and by proper proceedings its entire cost, except for street intersections, was assessed against the lots and lands abutting each side of the street throughout the length of the improvement, including the railroads which crossed it, without mentioning the street railway company, and said assessments were confirmed. That thereafter such assessments were paid or waivered as to all the abutting lots and lands except about one-third of the frontage, all of the unpaid part being along the west side of the street across the low ground, and the appellee received the money paid and bonds issued for assessments covering cost of the fill and the pavement from each curb to the center of the street except as stated. That said low ground was without any salable value. That the appellee, as president of the construction company, looked over the ground in company with the mayor and the city engineer, and an attorney employed by him on behalf of the company also examined the location and the ordinance, before the contract was signed.

There was also evidence, not entirely undisputed, to the effect the mayor and the city engineer, both of whom were members of the board of public works (Laporte

being a city of the fourth class) went with appellee to see Dr. Rumely, and he told appellee that the M. Rumely Company, of which he was then president and which claimed ownership of much of the low ground referred to, would pay $25,000 of the cost of the improvement, and that the mayor and city engineer stated that the street railway company would be required to remove its tracks to the new part of Madison street, as relocated. That appellee was told by somebody that the city had an agreement in writing with the Rumelys to pay $25,000. That both appellee and the attorney knew the street railway was then located on the old part of Madison street. And there was considerable evidence as to what was said and done and written by the city officers, city attorney, the street railway and appellee a year and two years after the contract was entered into. There was also evidence that Dr. Rumely ceased to be president of the M. Rumely company, and it failed to pay the promised $25,000.

No concealment nor attempt to conceal the contents of the records above mentioned is shown. The record of the official acts of the board of public works, as set out above, does not show that the city was bound or undertook to bind itself by contract to impose upon the street railway company any liability to pay part of the cost of the improvement. And even if the city could be held liable for a fraud perpetrated by members of the board of public works in verbally representing that the street railway company was legally bound to pay an assessment, and then releasing it from such obligation, although the verbal representations were contradicted by the recorded official acts of the board (as to which we decide nothing), the evidence falls short of proving that any such representations were made.

Appellee and his witness, including the attorney for the contracting company, the former Mayor, and the

former city engineer, testified only that the contractor was told that the city would thereafter require the street railway to be removed to and placed in the center of the new street. This promise, if made, was a mere promise that the city would thereafter take official action in a matter affecting the public.

Proof of a verbal promise to that effect does not support a finding that the improvement contract as actually made contained a stipulation that "the track of said railroad shall be laid in the center of Madison street from Lake street to Weller avenue," and that this was omitted by mistake from the contract as written and signed.

Neither does it support a finding that the city was guilty of constructive fraud in repealing an ordinance commanding the street railway tracks to be placed in the center of the new street, which ordinance had not been enacted until after the expiration of the time fixed by the contract for completion of the work, being after the greater part of improvement (the embankment) had been completed, and more than a year after the contract was entered into.

If the construction company and appellee, as its president, relied upon verbal assurances of Dr. Rumely and the mayor and city engineer as to the source from which the contractor could obtain payment, instead of relying upon the assessments, legally made on abutting property, and the liability (if any) imposed by law upon the street railway at that time, and if thereafter Dr. Rumely ceased to control the M. Rumely Company, and the city officers failed of re-election, and appellee was then disappointed because those verbal promises were not performed, that does not bring his case within the authorities above cited on which his complaint was grounded.

The evidence does not sustain the finding. The judg-

ment is reversed, with directions to sustain appellant's motion for a new trial.

Travis, J., not participating.