## THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF NORTH DAKOTA, Appellant, v. THE CITY OF BOTTINEAU, a Municipal Corporation, Respondent.

(227 N. W. 363.)

Opinion filed October 31, 1929.

L. J. Palda, Jr., C. E. Brace, and Robert W. Palda, for appellant.

W. H. *Adams,* for respondent.

ENGLERT, Dist. J. The defendant is a municipal corporation. In 1910, it constructed extensive sewer and waterworks systems. The city paid for those improvements by the issuance of special assessment warrants. The warrants were drawn upon a special fund, to be created by the collection of special assessments levied against the property benefited by the improvements. The improvements were regularly constructed, and accepted under contract properly entered into between the city and the contractor, and the warrants were duly issued in payment thereof. The special assessment commission assessed the lots improved according to the benefits derived, and the special assessment taxes have been annually certified by the city auditor to the county auditor.

On some of the lots thus improved, the general taxes and special assessments were not paid, since the completion of the sewer and waterworks systems in 1910. The lots were offered for sale for nonpayment of general taxes, and the special assessments. At the delinquent general and special assessment tax sales, there were no bidders, and the property was sold to Bottineau county for both the general and special taxes.

The plaintiff is the owner and holder of $10,028.20 worth of those warrants that were not paid by the special assessments. Of those that remain unpaid, $5,528.20 worth are water main warrants, issued in 1910, and were due and payable April 15, 1920, bearing 7% interest to date of maturity, and $4,500 worth are sewer warrants, issued in 1910, and became due April 15, 1923, bearing 7% interest to their due dates. The interest upon these warrants was fully paid to maturity by the city. On their due dates, the warrants were presented for payment, and were not paid for want of funds.

The plaintiff brought this action to recover from the city of Bottineau the sum of $10,028.20 for nonpayment of the said warrants, with 7% interest from and after their maturity. It alleges that the defendant was negligent in not bidding in or having the property struck off to it at the delinquent special assessment tax sale, and because of such negligence, the defendant became personally liable to the plaintiff in the amount of the warrants.

The defendant answered, denying that its failure to bid in the property amounted to negligence, and, if it did, that the plaintiff was in no way damaged thereby.

The case was tried to the court below without a jury. The trial court decided the issues in favor of the defendant, and entered judgment dismissing the action. The plaintiff appealed to this court.

The facts are stipulated, and in addition thereto, the defendant presented affidavits as to the value of the lots assessed and sold for nonpayment of the general and special taxes. From the facts stipulated, and affidavits submitted, the controversy presents two questions of law. (1) Was the city negligent in not bidding in or having the lots struck off to it at the delinquent special assessment tax sale? (2) If so, can the plaintiff recover, regardless of the value of the property assessed?

It is a matter of common knowledge that most cities and towns are heavily in debt, aside from various kinds of warrants made payable out of special assessment funds. On the other hand, the acceptor of warrants, given in payment of improvements actually made and completed according to contract, is entitled to know whether a municipality is in duty bound to carry out the plain provisions of the statute under which the warrants were issued, or will be generally liable for neglecting to do so. The questions presented are, therefore, of paramount importance.

■ Was the city negligent in not bidding in or having the lots struck off to it at the delinquent special assessment tax sale? The statute which authorizes the special improvements and the issuing of warrants in payment thereof, forms a part of the contract under which the work is done and the warrants accepted. Bankers Trust & Sav. Bank v. Anamoose, 51 N. D. 596, 200 N. W. 103; Cincinnati v. Public Utilities Commission, 98 Ohio St. 320, 3 A.L.R. 705, P.U.R.

1919C, 119, 121 N. E. 688; 6 R. C. L. 325; Lovell v. St. Paul, 10 Minn. 290, Gil. 229.

It is not necessary to set forth more of the statute than directly bears upon the points in controversy here. Section 3735, Comp. Laws 1913, provides:

"Whenever any parcel of land shall be offered for sale for a special assessment, as provided in § 3733, and there shall be no bidder therefor, the county auditor shall strike off such parcel of land to the city, making such assessment, and issue a certificate of sale therefor to such city, which certificate shall be assignable as hereinafter provided, and, if no redemption be made from such sale, or such certificate be not assigned within three years from the date of such certificate of sale, the piece or parcel of land so bid off shall become the absolute property of the city at the expiration of said three years, without any further act upon its part, and may be disposed of by the city at public or private sale, as may be provided by the city council and the city may redeem any parcel of land from a purchaser thereof under a sale for general taxes as is hereinbefore provided for such redemption in other cases, and any assignee of the city's certificate of sale may likewise, and in like manner redeem any such parcel of land from any such sale for delinquent general taxes, and such redemption shall have the same force and effect as provided in the two preceding sections. The city may at any time before its title to said land becomes absolute, by resolution of the city council, assign said certificate of sale to any person except the city auditor and city treasurer, their deputies and clerks, who shall pay the amount for which the same shall have been bid in, and the amount of all subsequent special assessments thereon then due, and all penalties, interest and costs upon the same, and the city auditor shall thereupon execute to the purchaser of such certificate of sale an assignment thereof, substantially as provided in § 1588."

It is true that a municipality is not generally liable upon warrants payable out of a special fund, if such fund does not exist, and even though it cannot be created, so long as the city is not negligent in the matter or commits no breach of duty. The principle thus stated is a well established rule. This court has had occasion, in Bankers Trust & Sav. Bank v. Anamoose, supra, to apply that rule. In that case, an action was brought to recover on special assessment warrants.

At the delinquent general and special tax sales of the properties, they were sold, in the absence of other bidders therefor, to the county and city, respectively. To a large extent, at the time of the action, those properties remained unredeemed, and unsold to private purchasers, by the county and city. The city was, therefore, unable to pay the warrants. The court said:

"The transaction was purely contractual and the city having done all it contracted to do without fault or neglect on its part, cannot now be held liable."

It will be noted that § 3735, supra, requires that when a lot is sold for a delinquent special assessment, and there are no bidders, it shall be struck off to the city. Independent of such a statute, a municipality is not in duty bound to bid in the property sold for nonpayment of special assessment taxes.

New Albany v. Sweeney, 13 Ind. 245; Creighton v. Toledo, 18 Ohio St. 447; Richardson v. Brooklyn, 34 Barb. 569.

The warrants in question stated on their face the purpose for which they were issued, the fund from which they were payable, and provided against general liability of the city. But such contractual restrictions do not save the city from personal liability for its negligence or breach of duty.

Page & Jones, on Taxation by Assessment, volume 2, § 1511 says: "If the city neglects to collect an assessment which it is bound to collect for the benefit of the contractor, it is liable personally therefor, even if there are contractual, or statutory, provisions against a personal liability of the city."

The decided weight of authority is to the effect that a municipality may become personally liable for any unreasonable delay, or breach of duty, due to its fault or negligence, in levying, confirming, or collecting special assessments, or diverting them after collection. Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357; Dakota Trust Co. v. Hankinson, 53 N. D. 356, 205 N. W. 990; Ward v. Lincoln, 87 Neb. 661, 32 L.R.A.(N.S.) 163, 128 N. W. 24; Dennis v. Willamina, 80 Or. 486, 157 Pac. 799; Little v. Portland, 26 Or. 235, 37 Pac. 911; Denny v. Spokane, 25 C. C. A. 164, 48 U. S. App. 330, 79 Fed. 719; J. W. Turner Improv. Co. v. Des Moines, 155 Iowa, 592, 136 N. W. 656; Reilly v. Albany, 112 N. Y. 30, 19 N. E. 508;

Bowery Nat. Bank v. New York, 8 Hun, 224; Dale v. Scranton, 231 Pa. 604, 80 Atl. 1110; Dime Deposit & Discount Bank v. Scranton, 208 Pa. 383, 57 Atl. 770.

In this last case, the court said:

"The city did not use ordinary diligence in the collection of those liens. Those bonds were payable within ten years, but, although twelve years have now passed, the assessments have not been collected to pay them. It is conceded they cannot be collected. Whether from want of ordinary professional knowledge in filing the liens, or from neglect to issue sci. fa. upon them, or from any one or all of the causes pointed out by the referee, the city has wholly failed to perform its duty to its creditor, this plaintiff. The creditor could not perform these duties—had no legal power to do so. It was the bounden duty of the city to prosecute the liens with due diligence. Through its gross neglect in some instances, they were lost. While by the acceptance of the bond the creditor agrees that he will look primarily to the fund raised by the assessment for payment, he agrees to do so on the condition that the city makes lawful assessment, files lawful liens, and preserves them by lawful proceedings. If it neglect to do so, the case is not essentially different from O'Hara v. Scranton, 205 Pa. 142, 54 Atl. 713, where the court below, affirmed by this court, says:

" 'By one clause of the contract, the city limited her liability to a particular fund, which she alone had the power to create, and the specific means to secure and collect. By another clause, she bound herself to exercise that power and to use those means. This she did not do.' Therefore the city is held liable."

From this decision, it will be noticed, that the city is not only in duty bound to make lawful assessment, and levy the tax, but to preserve such assessment liens.

In Commercial Nat. Bank v. Portland, 24 Or. 188, 41 Am. St. Rep. 854, 33 Pac. 532, the court said:

"So that, if the city fails to perform its duty, or, owing to its neglect or unreasonable delay, fails to obtain such fund, it is guilty of a breach of duty and is liable."

The statute in question is clear and mandatory. But it is said that the county auditor committed a breach of duty by not striking off the lots to the city, and that the city was not at fault. He is merely the

agent of the city for the purpose prescribed by the statute. Hauge v. Des Moines, — Iowa, —, 224 N. W. 520. The neglect of the county auditor does not excuse the neglect of the city. The city has taken no steps to correct the mistake, if such it be, or to right the wrong done. It has permitted title to ripen in the county. The county is not obligated to pay the special assessments, and so long as it holds the property, the special assessments cannot be collected.

It is argued by the defendant that the county holds the lots in trust for the city. If so, the city has not taken any steps to carry out the trust, though more than fifteen years have elapsed since the lots were first sold to the county. The warrants are past due many years, some since 1920, and the others since 1923, and this action was not begun until April 4, 1925. By its action, or failure to act, the city clearly acquiesced in and approved the conduct of the county auditor and the county. In Dale v. Scranton, 231 Pa. 604, 80 Atl. 1110, the court said:

"It would be most unconscionable to permit the city to stand idly by for a period of four years and more, either refusing or neglecting to do its duty in the collection of the assessments, and then say to the contractor you have no redress except to await the pleasure of the municipal authorities who in their own good time may or may not press the claims for collection."

The defendant also argues that it would not have benefited the holder of the warrants to have the property struck off to the city for nonpayment of the special assessment, unless it also redeemed the lots from the general tax sale, and that the city was not required to do so. All that does not excuse the city in failing to perform the duty resting upon it under the statute. The statute is as much a part of the contract as if it were set forth therein. The legislature provided by statute that where property is struck off to the city in the absence of other bidders, for nonpayment of special assessments, it may redeem from the purchaser of the same on general tax sale. Whether the statute obligates the city to redeem from such general tax sale, need not be determined in this case. But by redeeming from the general tax sale, the city may hold the property, and while it so possesses it, the property is not subject to general taxes. The city incurs no additional burden by either bidding in the property, or having it struck off to it,

but it may turn the property, and thus pay out in part or in full the special assessments and the taxes paid by the city necessary to effect a redemption. Property may be of little value today, and with the changing of times and conditions, may be in great demand tomorrow. This is especially so where it has the advantages of modern improvements, such as sewerage and water mains. Such improvements mean more to a city than so much cast iron and tile. They bring health and convenience, and generally increased values of the property. They are safeguards against fire, lower fire protection rates, and are insurers against pollution and disease. In short, they bring a resulting benefit to the whole city. As said by Judge Cooley, in Lansing v. Van Gorder, 24 Mich. 456:

"The improvement does not belong to the parties assessed, but to the public at large, and it is made from considerations of the general benefit."

The statute requires that when property is sold for delinquent special assessments, and there are no bidders, it shall be bid in by or struck off to the city. The purpose of this provision of the statute is to safeguard holders of warrants. If we were to say that the city was not negligent in disregarding the statute in the respects here complained of, where then should the line be drawn? The statute would be meaningless. Contractors and purchasers of warrants would have every reason to feel unsafe and uncertain. If the statute can be successfully violated or disregarded in one material respect, the door would be open to a disregard of it in any other respect. We cannot say that this part of the statute is less important than any other bearing upon special assessments and warrants issued thereunder. We conclude that the city was negligent in not having the lots struck off to it at the delinquent special assessment tax sale.

2. This brings us to the question of damage. The defendant contends, though it were held that its neglect amounted to a breach of duty for not having the lots struck off to the city, it amounted to damnum absque injuria, and that it is not, therefore, liable.

By its answer, the defendant sets forth "as an affirmative defense," that the lots "were worth less than the amount of the general tax for which each and all of said properties were sold. . . ." The city treasurer, the deputy sheriff, a druggist and a physician of the defend-

ant city, made affidavits supporting this allegation of the answer. Their affidavits are to the effect that none of the lots assessed was "worth the amount of the general tax levied against it any time since the year 1910;" and that the city could not have redeemed from the tax sale without financial loss.

This, then, clearly presents the issue of whether the value or lack of value of the property assessed for the public improvement is a defense to an action of this character. The statute does not deal with the value of the property. Its language presupposes that there may be no demand for the land, or else there would be bidders. The statute does not say that if the property is worth the general tax against it, or special assessment, or both, and there are no bidders at the tax sale thereof, that it shall be struck off to the city. It says, in substance, when property is offered for sale for nonpayment of special assessments, in the absence of bidders, it shall be struck off to the city. Its primary purpose is to save the property from getting away from paying the special assessments. But whatever the reason, regardless of the value of the property, the statute requires that it shall be struck off to the city, under the circumstances mentioned, and vests no discretion in the city. Its language is mandatory.

The value of the property cannot stand in the way of the plaintiff's right to recover. If it could, then, in every case where public improvements are made under contract, and the municipality fails or neglects to either make improvement districts or levy assessments, or do any other act needed and necessary to provide for the required fund, it could defend upon the ground that the property was of little or no value. The principle contended for is not only unsound, but would lead to endless confusion and needless litigation. We have not been cited to any case, nor have we found any, that so holds. It is true that, in the adjudicated cases on the subject, there is much that is conflicting and confusing. But from reading and considering a great many cases, it is apparent that the general liability of the municipality is not bottomed upon the value of the property assessed for the public improvement, but upon a breach or failure in some duty it owed to the contractor or his assignee. Reference to a few of the authorities will suffice to show that, while the courts freely use the word "damages" in connection with the general liability of a municipality for breach of contract for pub-

lic improvements, the damages spoken of are measured by the amount due under the contract with interest.

In volume 2, Dillon on Municipal Corporations, 5th ed. § 827, Judge Dillon says:

"But where the contract price is payable from assessments, the courts, having regard to the duty of the municipality to cause the assessment to be made and collected in a proper manner and without unreasonable delay after the work is done, have laid down the principle that the municipality is answerable in damages to the contractor for a breach of its duty in this respect, and in many cases they hold that the failure of the municipality to discharge its duty by making the necessary assessment, or by its unreasonable delay in collecting and paying over the money, constitutes a breach of the contract or a liability ex delicto, giving to the contractor a right to recover his compensation or damages against the municipality generally."

The court, in Jones v. Portland, 35 Or. 512, 58 Pac. 657, said:

"If, therefore, the city of Sellwood failed to comply with any of the requirements of the charter authorizing the improvements of the street at the expense of the abutting property by reason of which a special fund for the payment of the contract price cannot be raised, or if there has been any unreasonable delay by it in enforcing such provisions, or in collecting and paying over the money, the plaintiff has a valid cause of action against the city for the amount remaining due and unpaid on the contract."

In O'Neil v. Portland, 59 Or. 84, 113 Pac. 655, the court says:

"In this state it is now the settled law that where the expense of improving a city street is to be paid from a special fund, created by assessment on abutting property, a failure of the municipality to comply with any of the requirements of the charter essential to supplying such fund, or an unreasonable delay in enforcing such provision, or collecting and paying over the money, *gives the contractor a right of action ex delicto against the corporation for damages, in which he is entitled to recover the amount due under the contract with interest,* notwithstanding a provision therein that he shall look for payment only to the special fund, and will not require the municipality by any legal process or otherwise, to pay the same out of any other fund." (Italics ours.)

In a later decision, Dennis v. Willamina, 80 Or. 486, 157 Pac. 799, the court again had occasion to speak of the measure of damages in a little different language, but leading to the same conclusion:

"Whatever the rule may be in other states, it is settled in Oregon that, when the expense incurred for the improvement of a city street is to be paid from a special fund to be obtained by an assessment on the property benefited, a neglect of the municipality to comply with any requirements of the charter essential to secure such fund, or any unreasonable delay in enforcing such provisions of the fundamental law of the city, or a failure to collect or pay over the money within a reasonable time, *renders the municipality liable in damages for the cost of the improvement.*" (Italics ours.)

The conflict of authority, mentioned by the Oregon decisions, has reference to the question of general liability of a municipality on public improvement contracts or warrants for neglect of duty, and not to the question of the measure of damages.

Circuit Judge Sanborn, in Barber Asphalt Paving Co. v. Denver, 19 C. C. A. 139, 36 U. S. App. 499, 72 Fed. 336, said:

"If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds to be realized by assessments upon abutting property, and the city has power to make the assessments, but fails to do so, or fails to make valid assessments, and thereby to provide the fund out of which the contractor may receive the price of his labor and materials, the city is primarily and absolutely liable to pay the contract price itself. . . . In cases of this character, the city becomes primarily liable even when the contract expressly provides that the contractor shall accept the assessments in payment of the contract price, and that the city shall not be otherwise liable, whether the assessments are collectible or not."

In Gilcrest v. Des Moines, 157 Iowa, 525, 137 N. W. 1072, the special assessments were held void for failure to give proper notice of hearing upon the original resolution of necessity. The court said:

"This defect is chargeable to the city or its officers and not to the contractor, and, in the event that upon further hearing it is found that the contract has been substantially performed, then, so far as the cost

of the improvement would otherwise have been chargeable upon these lots, the contractor will be entitled to judgment against the city."

In Barber Asphalt Paving Co. v. Des Moines, 191 Iowa, 762, 183 N. W. 456, the court said:

"As a matter of general law, and by § 825, Code Supplement, 1913, and by adjudication in the Gilcrest Cases, the Barber Asphalt Paving Company was entitled to recover the amount of the Hurley certificate, to wit, $359.49, with interest at the rate of 6 per cent from and after the 24th day of June, 1908."

In those cases, through neglect of the city, the assessment was either declared void or the assessment tax not collected for one reason or another, and the city was held liable for its neglect of duty. In the case at bar, the city has nullified the assessment because of its failure to comply with the statute, which formed a part of the contract. The court, in Western Asphalt Paving Corp. v. Marshalltown, 203 Iowa, 1324, 214 N. W. 687, said:

"If a city cannot escape liability for a loss of interest occasioned to a contractor by its negligent delay in making an assessment, or for the amount of an assessment which is invalid because of its failure to take proper proceedings, or for its failure to assess the total cost of the improvement against property subject to assessment, we see no sound reason why it can avoid liability where the failure of the assessment was brought about by its own fraud."

In the very recent case of Hauge v. Des Moines, — Iowa, —, 224 N. W. 520, the court said:

"The city pledges itself, among other things, for the 'collection' of said special tax, and also pledges its 'full faith and diligence' for that purpose. The power to enforce the collection of these taxes by statute is conferred upon the city, and the lien on the property is in favor of the city. The fact, that the treasurer could not sell the same for lack of a bidder, does not excuse the city for failure to perform its pledge to use its best efforts, under the statute, to collect the same for the benefit of the bondholders. So far as shown here, the city did nothing to redeem its pledge in this respect, and it is so admitted in argument."

That argument applies to the case at bar. It is admitted that the city did not comply with § 3735, supra. In the case just cited, the court further said:

"This bond created an obligation on the part of the city to perform a certain statutory duty, and it certified that it had performed such duty. If it fell short on its certification, it should respond to the bond-holders for such shortage by reason of its misrepresentations in the certificate, and, in view of the fact that the measure of damages, either in a suit on a bond, or an action for a breach of a bond, is the same in both instances whether it be designated as a suit to recover on a bond, or an action in damages for a breach of a bond, the result would be the same, and the discussion resolves into a mere matter of nomenclature."

But it is argued here that the measure of damage for the negligence of the city must be based upon the value of the lots assessed. It will be noticed from the cases hereinbefore cited, and from the cases cited in the case of Hauge v. Des Moines, supra, that the amount which remains unpaid under the contract, the warrant or the bond, where the contractor, as here, has performed his contract, is the measure of damages.

The claimed defense of damage without injury is not open to the defendant. If it were, the defendant could take advantage of its own wrong. It contracted for the improvements. The material and labor for them were furnished, and construction satisfactorily completed by the contractor. The whole city received and enjoys the benefits thereof. As said in Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357:

"The city cannot, more than a private individual, take advantage of its own wrong to escape a contract obligation."

From a review of the authorities, and the facts in this case, we are of the opinion that the amount plaintiff is entitled to recover is measured by the amount of the warrants affected by the failure of the city to comply with the statute, and which remain unpaid, regardless of the value of the property assessed. In this case, as a condition to the entry of judgment as prayed for in the complaint, the plaintiff must surrender, either to the court or to the city of Bottineau, the warrants specified and set forth therein.

It follows that the judgment appealed from should be reversed, and judgment ordered for the plaintiff, with costs. It will be so ordered.

Burke, Ch. J., and Nuessle, J., and McKenna and Berry, Dist. JJ., concur.

754

Justices CHRISTIANSON, BIRDZELL, and BURR, deeming themselves disqualified, did not participate, Honorable M. J. ENGLERT, Judge of the First Judicial District, Honorable GEO. M. McKENNA, Judge of Second Judicial District, and Honorable H. L. BERRY, Judge of the Sixth Judicial District, sitting in their stead.