## PICKEN *v.* MILLER.

[No. 8,585. Filed May 27, 1915.]

1. APPEAL.—*Assignment of Errors.—Waiver.*—Errors assigned but not presented by appellant's brief are waived. p. 118.

2. NEGLIGENCE.—*Collisions on Streets.—Contributory Negligence.— Complaint.*—A complaint for injuries to a motorcyclist who was struck by an automobile at a street crossing, alleging that plaintiff, when fifty feet away, saw the automobile approaching three hundred feet from the crossing, is not objectionable as showing that plaintiff was guilty of contributory negligence, in the absence of anything therein to show that he knew that the automobile was approaching at an excessive speed. p. 118.

3. NEGLIGENCE.—*Collisions on Streets.—Last Clear Chance.—Complaint.*—A complaint for injuries to a motorcyclist who was struck by an automobile at a street crossing, alleging that though defendant "had ample time and room to drive his automobile to the west and rear of plaintiff, he carelessly and negligently drove the same to the east and right" and carelessly and negligently drove the same over and against plaintiff, and that defendant saw, or by the use of reasonable care could have seen plaintiff and avoided the collision, etc., was sufficient to invoke the application of the doctrine of last clear chance. p. 118.

4. APPEAL.—*Review.—Instructions.*—There was no error in instructing on the doctrine of last clear chance where one of the paragraphs of complaint was sufficient to invoke that doctrine, nor in giving an instruction in language which, though formerly disapproved by the Appellate Court, has since been approved by the Supreme Court. p. 119.

5. APPEAL.—*Review.—Instructions.—Urging Jury to Agree.*—The giving of an instruction urging the jury to agree on a verdict, stating that litigation is expensive and "the State expects you

to do your duty conscientiously and faithfully", that the court has no right and is not attempting to ask any juror to yield his conscientious and settled convictions as to the evidence, "but that if this jury is being detained from a verdict by any one man or two men, then it is a matter for those in the minority * * * to seriously consider whether his or their own judgment might not be mistaken", that all business transactions "are done upon the theory of listening to, and, in proper cases, yielding to, the views of others, if they are sound or reasonably so", and that "in a civil case a jury should approach the solution of the question in that spirit and not the spirit of controversy", etc., and should not "allow any outside considerations or motives to have any weight * * * except to be governed by the evidence as it has been detailed to you, and the instructions as the court has given them to you", and directing the jurors to retire and make an earnest effort to reconcile their views, was reversible error.   p. 120.

From Superior Court of Marion County (87,850) ; *Charles J. Orbison,* Judge.

Action by Francis S. Miller against William N. Picken. From a judgment for plaintiff, the defendant appeals: *Reversed.*

*Joseph E. Bell* and *George Shirts,* for appellant.
*Clinton B. Marshall* and *W. C. Stover,* for appellee.

HOTTEL, J.—This is an action brought by appellee to recover damages for injuries to himself and to his motorcycle, alleged to have been caused by appellant's negligence.

The complaint is in three paragraphs. The averments of the first paragraph are in substance as follows:   On the day of his injury appellee was riding his motorcycle east on Michigan Street, a street fifty feet in width running east and west in the city of Indianapolis, and appellant was driving his automobile north on Meridian Street, a street about the same width running north and south in said city. A collision occurred at the intersection of such streets. When approaching the intersection of said streets and driving carefully and when within fifty feet of the west line of Meridian Street, appellee looked both to the north and

to the south and saw appellant in his automobile approaching from the south and about 300 feet distant. Appellee proceeded to cross Meridian Street slowly and carefully, and when east of the center thereof he saw appellant approaching him at a high, excessive and unlawful rate of speed and in order to avoid a collision with said automobile, swerved his motorcycle to the left and northward. Appellant negligently and carelessly drove his automobile "towards * * * plaintiff at a high and unlawful rate of speed, to wit, thirty miles per hour, and did then and there, when near * * * plaintiff, negligently and carelessly turn the same sharply to the right and eastward and directly towards * * * plaintiff and caused the course of said automobile to be changed from said Meridian into said Michigan Street and to the eastward of said Meridian Street, and did negligently and carelessly drive * * * said automobile with great force and violence upon, against and over * * * plaintiff and his motorcycle, knocking him off," etc.

The second paragraph of complaint is substantially the same as the first with the exception that it proceeds on the theory that appellee was in a position of danger and that appellant in the exercise of ordinary care could have avoided the collision by swerving to one side of appellee's motorcycle. The averments which distinguish it from the first paragraph are in substance as follows: Appellee when crossing Meridian Street in order to get out of the course of appellant and give him ample room to pass to the rear and to the west, veered his motorcycle to the north and rode and drove the same across the center of Meridian Street; that although appellant had ample time and room to drive his automobile to the west and rear of appellee, he carelessly and negligently turned the same to the east and right and drove the same carelessly, negligently and at a high and dangerous rate of speed into said Michigan Street and "did carelessly and negligently drive and propel

the same over, on and against  *  *  * plaintiff and his motorcycle without any fault whatsoever upon the part of  *  *  * plaintiff, hurling him violently to the ground and injuring him.  *  *  * That appellant saw, or by the use of reasonable care could have seen,  *  *  * plaintiff so crossing the intersection of said streets  *  *  * and could have turned his automobile to the left  *  *  *, and avoided any collision'' with appellee.

The third paragraph seeks to recover damages for the motorcycle.

To each of such paragraphs appellant demurred for want of facts, which demurrers were overruled. The only answer filed was a general denial. There was a trial by a jury, and a general verdict for appellee, together with answers to interrogatories.

A motion for judgment on the answers to interrogatories and for a new trial, filed by appellant, were each overruled and judgment rendered on the verdict. From such judgment appellant appeals and assigns the following errors: (1-3) Error of the court in overruling appellant's separate demurrer to each paragraph of appellee's complaint. (4) Error of the court in overruling appellant's motion for judgment on the answers to interrogatories. (5) Error of the court in overruling appellant's motion for new trial. The first, third and fourth assigned errors are not presented by appellant's brief and are therefore waived.

The second assigned error challenges the ruling on the demurrer to the second paragraph of complaint. It is insisted that this paragraph shows: (1) that appellee was guilty of contributory negligence in attempting to cross the street in front of an automobile which he saw when fifty feet from the street, and which he then knew was going at a high and dangerous rate of speed; (2) that such paragraph is not sufficient under the doctrine of last clear chance. The aver-

ments of this paragraph are not open to the first criticism. While it is true, that they show that appellee when fifty feet away from the crossing saw appellant's automobile approaching 300 feet distant, they do not show that he, at that time, knew that it was approaching at an excessive speed. As to the second objection it is sufficient to say that the general averment of the paragraph, above indicated, to the effect that the appellant carelessly and negligently drove his automobile on and against appellee, was sufficient to invoke the application of the doctrine of last clear chance. *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490, 496, 77 N. E. 945; *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 410, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942; *Mortimer* v. *Daub* (1912), 52 Ind. App. 30, 38, 98 N. E. 845, and cases cited; *Cleveland, etc., R. Co.* v. *Van Laningham* (1913), 52 Ind. App. 156, 167, 97 N. E. 573, and cases cited; *Union Traction Co.* v. *Bowen* (1915), 57 Ind. App. 661, 103 N. E. 1096; *Southern Ind. R. Co.* v. *Drennen* (1909), 44 Ind. App. 14, 19, 88 N. E. 724.

It is next insisted that instruction No. 9 given by the trial court on its own motion was erroneous. Several objections are urged against this instruction, the one most 4. strongly insisted on, being to the effect that such instruction is predicated on the "last clear chance doctrine"; that neither paragraph of the complaint is sufficient on such theory, and hence that such instruction is not applicable to the issues. What we have said in our discussion of the sufficiency of the second paragraph of complaint disposes of this contention. The instruction, when read in its entirety, and applied to the second paragraph of the complaint, is not open to any of the objections made against it. Instruction No. 13 is objected to. An instruction in practically the same words was disapproved by this court in the case of *Elgin Dairy Co.* v. *Shepherd* (1913), 103 N. E. 433, but that case was taken over by the Supreme Court and the decision of this court reversed and

the instruction approved. See *Elgin Dairy Co.* v. *Shepherd* (1915), 183 Ind. 466, 108 N. E. 234, 109 N. E. 353.

Instruction No. 26 is objected to by appellant and is as follows: "Gentlemen of the jury, you have been out considering this cause for about fifteen hours, and have not been able to agree. Of course, I have no means of knowing how you stand or what your trouble is, but I want to say to you that it is very important that a verdict be secured. Litigation is very expensive to the parties, as well as to the county, and the State expects you to do your duty conscientiously and faithfully. I have no right to ask any juror to yield up his conscientious and settled convictions as to the evidence, and I do not ask you to do that, but if this jury is being detained from a verdict by any one man or any two men, then it is a matter for those in the minority, in view of the fact that the other members of the jury, who are equally as honest, and whose judgment is equally as good, take a different view of the evidence, to seriously consider whether his or their own judgment might not be mistaken. All business transactions are done upon the theory of listening to, and, in proper cases, yielding to, the views of others, if they are sound, or reasonably so. In a civil case, a jury should approach the solution of the question in that spirit and not the spirit of controversy, and not the spirit of any feeling toward another member of the panel, or as to any of the parties, nor should they allow any outside considerations or motives to have any weight with them except to be governed by the evidence as it has been detailed to you, and the instructions, as the court has given them to you. Now gentlemen, you will retire to your jury room and make an earnest effort to see whether you can not reconcile your views." Appellant insists, in effect, that this instruction was an attempt to coerce the minority of the jury into making a verdict, and in effect directed the jury to compromise; that the instruction assumed that the jury was detained by one or two jurors, and in effect told

such jurors to surrender to the majority; that it assumed that a verdict had not been agreed upon because of the views of one or two jurors, and that, in so assuming, the court gave unwarranted prominence to the assumed division of the jury on the questions involved and that in such respect the instruction had the same effect as if the court had first inquired how the jury was divided and then had given the instruction; that the court's reference to the way business matters were settled, and the duty of one or two jurors to "yield" to the views of others and thereby no longer detain the jury was a palpable effort to discredit such minority in the minds of their fellows.

While this instruction may not be open to all of the several objections urged against it by appellant, we are of the opinion that if any one or two of the jurors of the jury which tried this cause had in fact stood alone in favor of a verdict for appellant before the giving of said instruction such jurors probably went back to the jury room, after hearing such instruction, feeling that it had been addressed to them alone, and unless such jurors were above the average man in strength of conviction and tenacity of purpose the inevitable tendency of such instruction would be to bring such jurors to an agreement with their fellow jurors, even against the dictates of their own conscience and better judgment. Such an instruction would undoubtedly give to the ten or eleven jurors an advantage over the one or two which they did not before possess, and in our judgment the advantage would be such that it, in most instances, would make it possible for such majority to influence and control such minority regardless of the convictions and judgment of the individuals constituting such minority. In support of the instruction appellee cites: *Allen* v. *United States* (1896), 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528; *Bell* v. *State* (1906), 81 Ark. 16, 98 S. W. 705; *Terry* v. *State* (1906), 50 Tex. Cr. 438, 97 S. W. 1043; *Commonwealth* v. *Tuey* (1851), 62 Mass. 1. In

none of these cases will be found all of the objectionable elements found in the instruction under consideration. The court in this instruction lays stress on the expense of litigation to the parties, and the county, and the importance that a verdict should be secured, and it is in this connection suggested that if the jury is being detained from a verdict by any *one or two* men that *such minority should seriously consider whether his or their own judgment might not be mistaken.* Then follows the suggestion that all business transactions are done on the theory of listening to and in proper cases *yielding to the views of others.* With such admonition the jury is told to retire and "make an earnest effort to see whether you can not *reconcile* your views". (Our italics.) After hearing this instruction the jurors could hardly have gone back to their jury room with any other notion than that the court expected them to come to a reconciliation of their views by the one or two jurors yielding to the majority.

In the case of *People* v. *Sheldon* (1898), 156 N. Y. 268, 282, 50 N. E. 840, 66 Am. St. 564, 41 L. R. A. 644, Chief Justice Parker said: "An attempt to drive the members of a jury into an agreement is beyond the power of the court, and an obvious effort to effect such a result demands a new trial." In the case of *St. Louis, etc., R. Co.* v. *Bishard* (1906), 147 Fed. 496, 78 C. C. A. 62, the trial court after the jury had been out over night charged it as follows: "I want to say to you, gentlemen of the jury, that this has been a very expensive trial to the litigants. It has consumed three days of the court's time, and that in justice to both parties a verdict should be rendered if possible. The juror who is standing out against the other ten should listen to their arguments and should try and look at the case from their viewpoint. As I charged you and now charge you, you are the exclusive judges of the evidence in this case." Concerning this instruction the court on appeal said: "The charge itself was not sufficiently

guarded. Its tendency was to bring the one juror to an agreement with the others, even against the dictates of his own judgment." In the case of *Clem* v. *State* (1873), 42 Ind. 420, 437, 13 Am. Rep. 369, the Supreme Court in discussing an instruction which emphasized the duty of a juror to compromise or yield his views to that of his fellow jurors said: "If one juror is to yield his judgment to that of another, there should be some mode of determining which of them may adhere to his judgment, and which must yield." To the same effect, see, *Richardson* v. *Coleman* (1892), 131 Ind. 210, 29 N. E. 909, 31 Am. St. 429; *United States* v. *Allis* (1893), 73 Fed. 165; *Burton* v. *United States* (1905), 196 U. S. 283, 307, 25 Sup. Ct. 243, 49 L. Ed. 482; 2 Thompson, Trials §2303.

We are of the opinion that the trial court committed harmful error in giving the instruction and that on account thereof the motion for new trial should have been sustained. On account of such error, the judgment below is reversed with instructions to the trial court to grant a new trial and for any other proceedings consistent with this opinion.

NOTE.—Reported in 108 N. E. 968. Coercion of disagreeing jury as ground for a new trial is discussed in 16 L. R. A. 643. As to the doctrine of last clear chance in its general phases and as affected by plaintiff's due care or by his negligence, see 55 L. R. A. 418; 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379. See, also, under (1) 3 C. J. 1409; 2 Cyc. 1014; 3 Cyc. 388; (2, 3) 28 Cyc. 45; 37 Cyc. 281; (4) 38 Cyc. 1614; 11 Cyc. 747; (5) 38 Cyc. 1858.