### BURROUGHS v. SOUTHERN COLONIZATION COMPANY.

[No. 13,110. Filed November 1, 1928. Rehearing denied March 29, 1929. Transfer denied December 7, 1932. Petition to reconsider dismissed February 22, 1933.]

94

98

L. *Darrow, William J. Reed, Earl Rowley, C. V. Shields, Adler, Lederer & Kahn,* and *Pickens, Davidson, Gause & Pickens,* for appellant.

*Orville W. Nichols, George S. Grimes, Louis B. Ewbank,* and *Samuel Dowden,* for appellee.

NICHOLS, C. J.—This is an action growing out of an exchange of 4,480 acres of land in LaPorte and Starke counties, Indiana, owned by appellant, for 61,000 acres of land in Osceola and DeSoto counties, Florida, owned by appellee, consummated in the year 1916.

The second amended complaint, on which the case was tried, was filed on November 11, 1925, and in substance is as follows: Appellee is a corporation, duly organized, chartered and existing under the laws of the state of Florida.

On or about December 28, 1916, appellant made and delivered to appellee two certain deeds of conveyance, conveying or purporting to convey to appellee certain real estate situate in LaPorte and Starke counties, Indiana.

Appellant acquired such legal or record title as he had to said real estate from the Tuesburg Land Company. At the time of the execution of said deeds, there was pending in the LaPorte Circuit court, a certain suit wherein the State of Indiana was plaintiff and the Tuesburg Land Company and others were defandants, in which suit the state claimed to be the owner of, and prayed that its title be quieted to 2,060.4 acres of the said 4,480 acres of real estate, which lands so claimed were known as meander lands along the Kankakee River.

Both appellee and appellant knew of the pendency of said suit and the fact that it involved the title to 2,060.4 acres of said lands. Because of the defect in the title to said 2,060.4 acres of said 4,480 acres of land, appellee refused to accept deeds to any of said lands from appellant or pay the consideration therefor. Thereupon and in consideration of the premises and of the full payment by appellee of the consideration for said 4,480 acres of land and the acceptance of said deeds, appellee and appellant entered into a contract in writing on about December 28, 1916, at the city and state of New York, whereby appellant agreed that if the said suit of the *State* v. *Tuesburg Land Company, et al.* (1916), 61 Ind. App. 555, 109 N. E. 530, 111 N. E. 342 should be decided against the defendant therein, appellant should furnish a valid title to said lands, or, in case of failure to furnish such title within six months from the date of the decision in said case, thereupon to refund to appellee the purchase price at $60 per acre for the acreage which might be recovered by the State in said suit and which appellant had attempted to convey to appellee. A copy of this contract is made a part of the complaint.

Said cause of the *State* v. *Tuesburg Land Co. et al., supra,* was transferred on change of venue to the St. Joseph Circuit Court, and on February 21, 1919, a final judgment was rendered in said cause by said court whereby it adjudged, ordered and decreed that the State was the owner in fee simple of said 2,060.4 acres of lands and quieted the title thereto in the State.

The State, by said judgment, recovered 2,060.4 acres of land which appellant had theretofore attempted to convey to appellee as aforesaid.

More than six months has expired since the decision in said case, and appellant has wholly failed to furnish appellee a valid title to said lands or any part thereof, and has wholly failed and still fails to refund to appellee the

purchase price of $60 per acre for the 2,060.4 acres so decreed to be owned by the State.

There has been unnecessary and unreasonable delay on the part of appellant in complying with the provisions of said contract and there is now due and owing to appellee from appellant and wholly unpaid upon said contract, $134,624, with interest thereon from August 21, 1919, at 6% per annum, for which appellee demands judgment.

Appellant's demurrer to this complaint was overruled, after which appellant filed answer in eleven paragraphs, the first being a general denial, and the other ten affirmative answers. Appellee's demurrer as to each of these affirmative answers was sustained as to the second, third, fifth and ninth paragraphs, and overruled as to the fourth and four and a half paragraphs; and the court sustained appellee's motion to strike out the eighth and tenth paragraphs. The sixth paragraph was a plea of payment, and the seventh, failure of consideration. Appellant filed a counterclaim to the second amended complaint by which he asks for damages by reason of the breach of contract in failing to complete and in tearing up the railroad then under construction, in the sum of $300,000. Appellee's motion to strike out the counterclaim and its demurrer thereto were each overruled. The issues were closed by replies to the affirmative paragraphs of answer to which demurrers had been overruled, and by an answer in denial to the counterclaim. There was a trial by jury which resulted in two general verdicts, one for appellee against appellant in the sum of $151,334, and one for appellant against appellee in the sum of $75,000. The jury also returned its answers to interrogatories submitted to it to the effect that the written contract entered into by appellee and Howard Cole & Company, on August 1, 1916, was executed by said company for and on behalf of appellant, and that the exchange of the lands here involved was made pursuant to said contract. Appellant filed its mo-

tion for a *venire de novo,* which was overruled. Appellant's motion for a new trial was also overruled, and judgment was thereupon rendered in favor of appellee for $151,334, and interest and costs, and judgment on the answers to interrogatories notwithstanding the general verdict, that appellant take nothing by his counterclaim. From this judgment this appeal is prosecuted. The errors and cross-errors assigned and presented, germane to the substantial questions involved, are hereinafter considered.

We do not discuss the alleged error in overruling appellant's demurrer to the complaint, as the substantial question there presented is more fully presented, and is discussed in considering the alleged error in sustaining appellee's demurrer to the second paragraph of answer. Appellant forcefully contends that the court, after overruling appellee's demurrer to the second paragraph of answer to the second amended complaint, erred in setting aside its ruling and in sustaining such demurrer. As we understand this question, there is merit in appellant's contention. This paragraph alleges that appellee was a foreign corporation, and had not qualified, and could not qualify in Indiana, on account of its having been put in the hands of a receiver in the states of Minnesota, Florida and Indiana, and that such receiverships were still pending, and that its charter authorized it to own stocks and bonds of railroad companies, which would not be permissible under the laws of this state, and that the contract sued upon was made in Indiana, in reference to Indiana lands, and by the failure of appellee to qualify before doing business in the state, and entering into such contract, the same was ultra vires and void. It is expressly averred that appellee is and was a corporation organized by virtue of the laws of the State of Florida, and was such corporation at the times involved, and that it had a capitalization of $1,500,000, and its purposes and

objects were that of buying, selling, mortgaging, leasing and otherwise acquiring and disposing of lands, and the doing of a general real estate and rent collecting business, and buying and selling timber and owning shares of securities in other corporations, including railroad corporations, and in cultivating, farming, developing, irrigating and treating lands for agricultural purposes in any form or manner. That such corporation entered into an agreement in the State of Indiana prior to July 1, 1916, to purchase the lands described in the complaint, in La-Porte and Starke counties, Indiana, and did, pursuant to said agreement, take possession of said lands and occupy the same by its servants, agents or tenants on or about September 20, 1916, and appellant did convey to appellee such lands by a good and sufficient warranty deed, pursuant to the agreement so entered into, and appellee, prior to the delivery of said deed of conveyance, took possession of and dominion over said lands in Indiana, and by its agents and officers, before said deeds were executed and believed and did use said lands for the purposes for which they were purchased, to-wit—renting, making hay and farming the same, in Indiana, and that the contract herein sued upon grew out of and was a part of the same transaction in the purchase and sale of such lands that was made and entered into in Indiana by and between appellee and appellant on or about December 28, 1916. It is clearly averred in such paragraph of answer that appellee was a foreign corporation, and that it had not qualified and could not qualify so as to transact business in the state as required by the statute, and that at the time of the execution of the contract in suit, it was transacting in this state the kind of business for which it was organized.

Sec. 4909, Burns 1926 (Acts 1907, p. 286), provides: "That before any foreign corporation for profit shall be permitted or allowed to transact business or exercise

any of its corporate powers in the State of Indiana, . . . it shall be required to comply with the provisions of this act and shall be subject to all the regulations prescribed herein. . . ."

There has been much discussion and difference of opinion in this court whether under the above section and subsequent sections, as well as other provisions of the statute, contracts made in violation thereof are void or but voidable. For the purposes of this opinion we do not need to review the cases discussing the question, but for a consideration thereof, pro and con, see the majority opinion in *Peter & Burchard Stone Co.* v. *Carper* (1933), post 554, 172 N. E. 319, and the dissenting opinion in such case, 172 N. E. 775.

Whether, however, the contract involved is void or not can make no difference under the facts averred in this paragraph of answer. It is to be observed that it is averred therein that appellee was a foreign corporation and had not qualified and could not qualify in Indiana, on account of its having been put in the hands of a receiver. As was said in *Lowenmeyer* v. *Nat'l Lumber Co.* (1919), 71 Ind. App. 458, on page 466, 125 N. E. 67, "It is well settled in this state that, where a foreign corporation has failed to comply with a statute giving it the right to transact business in this state, and becomes insolvent, a receiver or trustee appointed to administer its affairs can not maintain an action brought in this state on a claim arising therein; and that where such corporation reaches a state which prevents a compliance with such statute, the facts with reference to its non-compliance and condition may be pleaded in bar to the action." Appellee presents that the contract sued on is a single isolated contract, and that as such it may be enforced in Indiana without a compliance with the statute. In the Lowenmeyer case above cited, it was stated that where a corporation enters into a single contract or engages in some other isolated business act within a particular state with

no intention to repeat the same therein, or to make such state the base for the conduct of any of its corporate business, the courts as a rule have said that such corporation may not be said to be doing business or transacting within the meaning of the usual statutory provisions relating to the admission of foreign corporations. But in that case it was held that where a foreign corporation purchases real estate for use as a coal yard, and so uses the same in conducting a retail coal business within the state, such purchase is not an isolated transaction, and it fell within the inhibition of the statute here under consideration. By the averments of the second paragraph of answer herein, the purposes of appellee corporation were those of buying, selling, mortgaging, leasing and otherwise acquiring and disposing of lands, cultivating and farming lands and the doing of a general real estate and rent collecting business, and that, pursuant to its purposes, it purchased said lands and entered into possession and assumed dominion over them, and used the same for the purposes for which they were purchased, to-wit: renting, making hay and farming the same, and it is averred that the contract in suit grew out of and was a part of the same transaction in the purchase and sale of such land. Under these averments of the answer, it must be held that these acts were a prohibited exercise of appellee's powers within the state. If appellee was not transacting business within the state, then it must be that farming is not a business.

In *North Dakota, etc., Co.* v. *Abel* (1927), 85 Ind. App. 563, 155 N. E. 46, we held that where a foreign corporation had taken a second mortgage on real estate in Indiana which it was compelled to foreclose, and to take a conveyance at the foreclosure sale, it was not transacting business in Indiana within the meaning of the statute, but the facts there involved clearly distinguish the case from the instant case. The business there involved was

clearly North Dakota business, and the corporation was trying to get out of the state instead of coming into the state to conduct a business in pursuance of the purposes of its organization. In the Lowenmeyer case this court held that in this state where a foreign corporation has failed to comply with a statute giving it the right to transact business in this state, such facts may be pleaded in bar to the action. So, averments in this paragraph of answer with reference to non-compliance and the appointment of a receiver for appellee corporation before the commencement of this action are clearly in bar. Appellee argues that the contract in suit was not an Indiana contract, but the second paragraph of answer avers that it was, and the contract itself is not at variance with this averment. Even if it were not, it was, as averred in the answer, a part of the transaction which constituted doing business in Indiana, by which appellee acquired real estate to farm and otherwise carry out a part of its corporate purposes in this state, in violation of the law. Further, the statute does not require that the contract must be executed in Indiana in order that it be inhibited. If, in doing business in this state unlawfully, appellee did some acts outside the state which were necessarily a part of, and prerequisite to doing business here, the whole transaction would be within the inhibition of Indiana law. The provision of the statute that no foreign corporation, such as here, shall be permitted to transact business within the state, until it has complied with the statute, and there is no contention that appellee corporation has or can comply, constrains us to hold that the court erred in sustaining appellee's demurrer to the second paragraph of answer.

It was error for the court to sustain appellee's demurrer to the third paragraph of answer. This paragraph avers in substance that at the time of the commencement of the action, because of the insolvency of appellee, a court of competent jurisdiction

had appointed receivers for it, which were in full charge of all the property of the corporation, which property was being administered by the court through its said receivers, and that therefore, appellee had no right to function as a corporation or to enforce the contract here involved. Further, that at the time, appellee had never qualified to do business in this state and that no court having jurisdiction over the property of appellee including the contract here involved, had authorized the bringing of this action.

The tenth paragraph alleges that appellee mortgaged the lands involved, and failed to pay the interest, taxes, and principle sum of said debt before the breach herein, and lost its title to such lands by reason of such forfeiture and failure on its part to pay the obligations which it owed; that after appellee lost its title, the Tuesburg Land Company, appellant's warrantor and immediate grantor, perfected the title to the lands appellee claimed to have lost, and that appellee did acquire a title to all of said lands, claimed to have been lost and that appellant could not perfect a title in the name of appellee for the reason that appellee had lost its title, but that appellant did correct and perfect the title, and secured the title to the land in question, which he caused to have conveyed to the present owner of the lands; that he secured the title after appellee had lost its title by reason of its failure to pay a mortgage debt, taxes, interest, etc. This paragraph was stricken out on appellee's motion. We do not see how the averments of this paragraph of answer, which we may say are in some confusion, can be a defense to the cause of action herein. By the contract which was the basis of the action, appellant agreed to furnish a valid title, by fair implication, to appellee, and, failing so to do, to refund $60 per acre for the lands to which its title failed, the refund to be made within six months from the date of decision in the Tuesburg Land Case.

This, under the averments of the complaint, he failed to do, and the recovery demanded is for this breach of the contract. Under the Tuesburg decision, *supra,* the state was held to be the owner of 2,060.4 acres of land which appellant attempted to convey. As this land belonged to the state, as held in the Tuesburg case, and as averred in the complaint and not denied in the tenth paragraph of answer, appellee could not have placed a valid mortgage thereon, and no valid sale thereof could have been made by a foreclosure of such mortgage. So far as appears by the pleadings herein, the state is still the owner of these lands. We hold that there was no reversible error in striking out the tenth paragraph of answer.

The eighth paragraph of answer avers that the consideration for the execution of the contract in suit has partially failed in that appellee promised and agreed with appellant that it would build 15 miles of railroad and equip the same, and operate the same in and to the lands in Florida, a reasonable cost for the construction and equipment of the same would be $12,000 a mile, which appellee failed to do. It is clearly averred in the complaint that the contract in suit was executed in consideration of the full payment of the consideration for the 4,480 acres of land, and the acceptance of the deeds therefor, and demands judgment for $143,-624, because of appellant's failure to furnish title to 2,060.4 acres thereof. But by the eighth paragraph of answer, in the nature of recoupment, appellant avers that a part of the consideration was the building of 15 miles of a railroad, at a cost of not less than $12,000 per mile, or $180,000. While the paragraph does not say that appellant had been damaged in the sum of $180,000, it could easily have been amended in this particular had a demurrer thereto pointed out this defect. It was error to sustain the motion to strike out the eighth paragraph of

answer. *Moorhouse* v. *Kunkleman* (1912), 177 Ind. 471, 481, 96 N. E. 600; *Hart* v. *Scott* (1907), 168 Ind. 530, 81 N. E. 481; *Guthrie* v. *Howland* (1905), 164 Ind. 214, 73 N. E. 259; *Atkinson* v. *Wabash R. Co.* (1895), 143 Ind. 501, 41 N. E. 947.

The ninth paragraph of answer avers that the contract sued on herein was delivered by appellant to appellee as a part of a transaction in exchange of lands between them, which had been agreed upon between them by parol agreement prior to July 1, 1916, including the agreement herein sued upon, and the agreement as to what was the consideration to be paid to appellant by appellee, which was the 61,000 acres of land in Florida, and the building of a railroad in and to such lands from Keenansville to a point on the Kissimmee River. And that it was agreed by parol that papers were to be executed including the agreement herein sued upon; and the deeds at a later date, and prior to the time of the execution of the deeds by appellant to appellee, and under said parol agreement, appellee took possession of said Indiana land, and continued to operate the portion of the railroad that had theretofore been built, and continued the construction of said railroad toward the Kissimmee River. That the contract here sued upon was a part of and made contemporaneously with the exchange of lands between appellee and appellant; that deeds therefor were delivered and exchanged, and the contract herein sued upon was delivered, all pursuant to and agreeable to the parol agreement made and entered into in Indiana, contemporaneously, December 27, 1916, in the State of New York; that appellee, after having received a deed for the Indiana lands, and before the breach of the contract herein sued upon, without the consent of appellant and over his objections, discontinued the operation of that portion of the railroad which had been built, and discontinued the construction work on that portion which had

not been built between Keenansville and the Kissimmee River, and tore up that portion which had been built and sold the steel rails and ties and road bed and converted the money to the use and benefit of appellee and thereby breached his contract with appellant that had theretofore been made and agreed to between them as a part of the consideration for appellant deeding to appellee the Indiana lands, without any legal excuse for so doing, and over the objections and protest of appellant. We observe again, that as appears by the complaint, the contract in suit was executed in consideration of the full payment of the consideration for appellant's land, and as averred in this paragraph of answer, a part of that consideration was the building and completion of the railroad therein, and heretofore mentioned. Appellee having failed to perform this consideration, in other words, having breached the contract upon which it sues, can not enforce it against the other party thereto. It must be able to show performance on its part before it can prevail in a suit on the contract against the other party.

*Skehan* v. *Rummel* (1890), 124 Ind. 347, 24 N. E. 1089; *Magic Packing Co.* v. *Stone-Ordean Co.* (1902), 158 Ind. 538, 542, 64 N. E. 11; *Cullen-Friestedt Co.* v. *Turley* (1912), 50 Ind. App. 473, 97 N. E. 946.

The ninth paragraph of answer stated a good defense, and the demurrer thereto should have been overruled. Appellee's demurrer to this paragraph was sustained. The fourth paragraph alleges that the contract sued upon grew out of and was a part of the transaction between appellee and appellant on the exchange of their lands, and that appellee was indebted to appellant for failure to construct a railroad to the Florida lands which appellee had conveyed to appellant as appellee had agreed to do. That for the convenience of appellant, the Florida lands were conveyed to the Burroughs Land Company, a corporation of which appellant was the sole owner, and that such cor-

poration was dissolved before this action was brought, and all its assets, choses in action and property of every kind and character were turned over to and belonged to appellant. That appellant's lands were of much greater value than those of appellee, unless the railroad was constructed in and to said lands, and that that was a part of the consideration for the exchange, and appellee is indebted to appellant, on account of its failure to build said railroad in the sum of $200,000.

Appellee has assigned as cross-error, the action of the court in overruling its demurrer to this paragraph of answer. The substantial question which appellee undertakes to present is that the facts alleged are not sufficient to show that the Burroughs Land Company, held the title to the Florida land in trust for appellant. But there is no memorandum to the demurrer which called the court's attention to this contention of appellee. Without such memorandum such question is waived. *City of LaPorte* v. *Ahlborn* (1922), 191 Ind. 485, 490, 133 N. E. 874.

However, the averments are that appellant was the sole owner of the corporation, and that upon its dissolution he succeeded to all its assets which would include the right of recovery for appellee's alleged breach of contract to build the railroad, the same as the corporation could have done. *City of LaPorte* v. *Ahlborn, supra,* on page 489.

With this averment the answer was sufficient to withstand appellee's demurrer. Appellee has attempted to present other questions as to this paragraph by abstract statements, unsupported by citation of authorities. As presented, we are not required to consider them.

It is to be noted that the contract mentioned in the paragraphs of answer of appellant and in the counter-

claim which contains the same general averments as the answers, and which was sufficient to withstand appellee's demurrer, and in which appellant avers there was a consideration to build a railroad, was, as averred, entered into prior to July 1, 1916, and not a certain purported written contract which was executed by Howard Cole & Company, in August, 1916, which was introduced in evidence. Appellee was permitted to prove, by parol, over objection of appellant, that Howard Cole & Company executed said written contract for and on behalf of appellant, as his agent. Such contract, though in evidence, is nowhere mentioned in the pleadings. Had it been the contract involved in the answers, and counterclaim, as the consideration therein set out was clearly contractual, it could not have been contradicted, added to, or taken from by averment or proof of a parol consideration to build the railroad.

The fourth and one-half paragraph of answer which covers about eight pages of the record, very briefly stated, alleges that as a part of the transaction had between appellee and appellant in the exchange of lands owned by appellant in Indiana, for lands owned by appellee in Florida, appellee and its officers and representatives fraudulently induced appellant to exchange his Indiana lands, which were of the value of $350,000, for 61,000 acres of land in Florida which were of the value at that time of $120,000 without the railroad, and by fraudulently representing to appellant that appellee had financed the railroad to and into said lands, which were remote from a railroad and railroad facilities, and were wild and uncultivated lands, but were susceptible of being developed with railroad facilities, and falsely represented to appellant that they were then constructing and would in a short time complete the railroad; that they had it financed in and to said lands that appellee was to convey to appellant for his lands in Indiana of the value of $350,000; that the statements made

by appellee's officers were made for the purpose of deceiving appellant and inducing him to trade his lands of the value of $350,000 for lands of the value of $120,000; that appellee was engaged in the business of selling and deceiving persons who were buying lands from it in Florida, by false representations that it would complete and operate a railroad, and that they had financed the building of the same; that the statements made by appellee were false; that appellee at the time was insolvent, and had not financed the building of the railroad, and did not intend to build it though it was partly under construction, and as soon as appellant traded his lands of the value aforesaid to appellee for its lands for the value aforesaid, appellee discontinued the operation of said railroad and tore up the tracks and ties and sold them and kept the money; that appellant relied upon said statements at the time of making said trade and believed them to be true, and appellant asks damages in the sum of $183,000.

Even with this brief synopsis of this paragraph of answer, it is so apparent that it is a good answer on the theory of fraud, that we do not deem it necessary to enter into a discussion of this question presented by appellee on cross-error. The answer in its entirety is much stronger on the theory of fraud upon which it was prepared, than the synopsis above set out. But, after having sustained this paragraph of answer, the court at the trial, by its instruction five told the jury that if it should find that the contract for the exchange of lands was reduced to writing, and the exchange of lands was made pursuant thereto, it should then return a verdict for appellee. This instruction covers the entire case, as to all defenses of appellant, and thus eliminates the defense of fraud as set up in said four and a half paragraph. A written contract does not preclude a defendant of fraud and deceit. *Hines* v. *Driver* (1880), 72 Ind. 125.

It is to be observed that by this instruction the court instructed the jury that if it should find· that the contract of August 1, 1916, which, we observe, was not the contract sued on or in any way mentioned in the pleadings, was reduced to writing and the exchange of lands ·made pursuant thereto, then it should return a verdict for appellee. It needs hardly to be mentioned that the exchange of lands between appellant and appellee was made by the respective deeds executed by them, and of course such exchange was by written instruments, or deeds. Such being the case, it was for the court to construe the written contract and the deeds and to determine from their contents as to whether the deeds were executed pursuant to the written contract. In other words, the construction of the writings was for the court and not for the jury. *H. G. Olds Wagon Works* v. *Coombs* (1890), 124 Ind. 62, 84, 24 N. E. 589; *Bettman* v. *Shadle* (1899), 22 Ind. App. 542, 545, 53 N. E. 662; *Comer et ux.* v. *Himes* (1875), 49 Ind. 482, 488; *Symmes* v. *Brown* (1875), 13 Ind. 318; *Robbins* v. *Spencer* (1890), 121 Ind. 594, 600, 22 N. E. 660.

And had the court so construed them with reference to each other it would have been compelled to say that the exchange was not pursuant to the written contract, for the descriptions are substantially different, numerous sections of the land in Florida described in the contract being omitted from the deeds to appellant while other sections which were not in the written contract were included in the deed; and there was a variation of eighty acres between the written contract and the deed of the Indiana land to appellee. Thus it clearly appears that such written contract was superceded by subsequent agreement, and it was for the court, and not the jury, to determine from the construction of the writings themselves, that the deeds were not made pursuant to the written contract. While it conclusively and undisputedly

appears from parol evidence that the descriptions were changed, it was for the court to determine this fact from an examination of the writings. Appellant emphatically denies any knowledge of the contract of August 1, 1916, which was executed by Howard Cole & Company, as appellee claims, for and on behalf of appellant, but as it seems to us, it makes no difference in effect whether it was executed for appellant or not, for it was not carried out.

Instruction No. 4, given by the court, after setting out the terms and stipulations of the contract in suit, and that by the decree of the court in the Tuesburg Land Company case, the State recovered 1,789.42 acres of the land which appellant was attempting to convey to appellee, then instructed the jury that because of these facts appellee was entitled to recover on its complaint $107,365.20, and interest thereon from August 21, 1919, or a total of $151,420.20. Conceding that the facts upon which the instruction was based were undisputed, and that it was not an invasion of the province of the jury to state them, still the instruction is peremptory and informs the jury that because of the contract sued on and the subsequent decree of the court in the Tuesburg case appellee might recover regardless of appellant's affirmative defenses as set up in his respective paragraphs of answer. A mandatory instruction which ignores the issues, defenses and evidence, is erroneous. *Baltimore, etc., Co.* v. *Walker* (1908), 41 Ind. App. 588, 84 N. E. 730.

By the Instruction No. 9, the court told the jury that the South Florida & Gulf Railroad, being the one here involved, was, on December 28, 1917, along with all other railroads in the United States, taken over by the United States, as a war measure, and that from that date until March 1, 1920, it remained in the possession and under the control of the government, and

that between said dates, appellee could in no way be held liable for its failure to construct it or complete it. There was no issue as to this matter presented by the pleadings, and the National Defense Act authorizing the President to take over the railroads did not include the partially constructed railroad here involved, 10 U. S. C. A. §1361, and, further, the evidence of Maxwell A. Kilvert, president and general manager of appellee company, shows that appellee commenced operating the railroad in June, 1918, and so continued until the last of the year 1918, when the service was discontinued, and it was not operated after that time. It further shows that the railroad was not completed because the president of the road was not able to make financial arrangements to complete the same, and that appellee tore it up in the early part of the year 1919, and sold the rails and ties. Instruction Number 9 should not have been given. .*Costly* v. *McGowan* (1898), 174 Ill. 76, 50 N. E. 1047.

The court erred in its instruction No. 15, in which the court told the jury that the measure of damages to appellant would be the difference in value of the Florida land without the railroad and their value with the railroad, that were owned by appellant at the time the contract was breached. Appellant was entitled to the benefit of his bargain at the time of the exchange of the lands, and he had a right thereafter to sell the lands with the representation that had been made to him that the railroad was being constructed, and he was, of course, liable in damages to his purchaser if such representations proved to be false. He offered to prove that he was unable to collect deferred payments for lands sold, after appellee failed to construct the railroad. The true measure of appellant's damages was the difference in value of the lands with and without the railroad at the time of the exchange.

The same infirmity appears in instruction No. 12, and in instruction No. 17 given by the court, that appears in

instruction No. 5, above considered, in that each ▪ of these instructions wholly eliminates the defense of fraud as set up in paragraph four and a half. The misconception, both by the court and appellee's counsel, of the law with reference to the contradiction of a written contract by parol evidence of fraud is so marked that we consider it well to quote from *Hines* v. *Driver*, *supra*, on this point. In the opinion, written by Elliott, J., speaking with reference to an instruction with a similar infirmity, the court says: "This instruction was erroneous. The clause directing the jury to entirely disregard any parol statements different from the provisions of the contract was, under the issues and the evidence in this case, entirely too broad. . . . It is an elementary doctrine, everywhere recognized by common law courts as well as by courts of equity, that evidence tending to show fraud is admissible in cases where fraud is at issue, although it may vary, add to, or contradict the terms of the written contract." Appellant's instruction No. 4, as tendered, was a correct statement of the law with reference to appellant's right to recover damages because of the false statements which induced the contract, if proven, and should have been given, but when the court modified such instruction by adding a proviso thereto to the effect that the jury should find the contract for the exchange of the lands was in parol and not in writing, and gave it as the court's instruction No. 17, it erred.

After the jury had retired, and before it reached a verdict, and without notice to appellant or his attorney, and in the absence of appellant and his attorney, ▪ the court called the jury to the jury box and gave an additional instruction, No. 21, as follows: "You have been considering this case for about eighteen hours and have not been able to agree. I have no means of knowing how you stand or what the difficulty is which prevents your agreeing, but I think it proper to say that

I think it is very important that a verdict be secured. Litigation is very expensive to the parties and to the county as well. I have no right to ask any juror to yield up his conscientious and settled convictions as to the evidence and I do not ask that you do that. This is not a matter of life or death to the parties but it is purely a business matter. No twelve men endeavoring to transact a business matter would be able to have absolutely the same views, but all business matters are done on the theory of listening to the views of others and yielding some of your own where the opposite view is reasonable.

"In a civil case the jury should approach the solution of the question in that spirit and not in a spirit of contention or controversy, nor in a spirit of resentment or ill-feeling toward the parties or other members of the panel, nor should they allow outside considerations or motives to have any weight in deciding the case, but the jury should be governed solely by the evidence in the cause and the instructions of the Court.

"Now in view of the fact that other jurors take a different view of the evidence from yourself, I ask each juror to seriously consider whether your individual judgment may not be mistaken. With these admonitions, you will retire to the jury room and make further earnest effort to see whether you cannot reconcile your views."

This instruction was evidently copied verbatim, with the exception of one sentence which might have been justified rather than other parts thereof, from the opinion in *Churchill* v. *Woodruff* (1917), 66 Ind. App. 241, 118 N. E. 136, where it was condemned.

For instructions of similar import which have been condemned, see: *Picken* v. *Miller* (1915), 59 Ind. App. 115, 108 N. E. 968; *Richardson* v. *Coleman* (1892), 131 Ind. 210, 29 N. E. 909, 31 Am. St. Rep. 429; *Clem* v. *State* (1873), 42 Ind. 420, 13 Am. Rep. 369; *People* v. *Sheldon*

(1898), 156 N. Y. 268, 50 N. E. 840, 41 L. R. A. 644, 66 Am. St. Rep. 564.

It is to be observed that after long deliberation, and failure to agree, the court, in the absence of the parties or their counsel, and without notice to them, called the jury to the jury box and gave the above objectionable instruction. Sec. 593, Burns 1926, provides that: "After the jury has retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given *in the presence of, or after notice to, the parties or their attorneys.*" (Our italics.) The court's action was in violation of the spirit of this statute. *Danes* v. *Peirson* (1892), 6 Ind. App. 465, 33 N. E. 976.

Appellant forcefully contends that the court committed reversible error when it overruled appellant's objection to the following question, propounded to Maxwell A. Kilvert, appellee's president: "Were the two deeds for the 4,480 acres of Indiana land that have been received in evidence accepted by you and were the deeds of the Florida lands, the 61,000 acres, delivered to Burroughs or the Burroughs Land Company in pursuance to and fulfillment of this contract, dated August 1, 1916?", and in permitting the witness to answer in the affirmative. There is merit in appellant's contention. The contract and the deeds were written instruments, unambiguous, and, as stated above, their interpretation was for the court, and not for the witness, and we may add that it was error to submit the same question in substance to the jury. Its harmful effect there appears in that because of the jury's answer thereto, the court rendered judgment in favor of appellee notwithstanding the general verdict.

Had the interrogatory been a proper one to submit to

the jury, still the mere fact that the exchange of lands was made pursuant to the contract of August 1, 1916, would not preclude the defense of fraud as set up in paragraph four and one-half of answer, which the jury, in returning a $75,000 verdict in favor of appellee, must have found was proven. The court erred in rendering judgment for $151,324 in favor of appellee on the answers to interrogatories notwithstanding the general veridect, thereby ignoring the verdict for $75,000 in favor of appellant.

Of the 243 reasons assigned by appellant for a new trial, we have considered only those presented that we deem likely to become controlling questions at another trial.

The judgment is reversed with instructions to the court to grant a new trial, and for further proceedings in harmony with this opinion.

Enloe, J., not participating.