439 P.2d 723

**WALTER E. HELLER & COMPANY OF CALIFORNIA, a corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**James R. STEPHENS and Guy A. Swartz, a Partnership, and Guy A. Swartz, as an Individual, Defendants-Appellees,**

**and**

**James R. Stephens, as an Individual, Defendant-Appellee and Cross-Appellant.**

**No. 8393.**

Supreme Court of New Mexico.

March 4, 1968.

Rehearing Denied April 24, 1968.

Oscar L. Donisthorpe, Farmington, David A. Grammer, Jr., Albuquerque, for appellant.

Marvin Baggett, Jr., Farmington, for Swartz, as an individual.

Burr & Cooley, Farmington, for appellee Stephens.

## OPINION

MOISE, Justice.

Plaintiff-appellant, hereinafter referred to as "Heller," is a California corporation. It brought this action to recover amounts claimed to be due from defendants-appellees, hereinafter referred to as defendants, citizens of New Mexico, on a "lease" agreement executed by them with Tri-County Leasing Corporation, hereinafter referred to as "Tri-County," a California corporation, and by Tri-County assigned to Heller.

The record discloses that defendants contracted with Dynamics Research, Inc., in Arizona, for the manufacture of a custom-built mill for use at a mine operated by defendants near Seligman, Arizona. Negotiations were then entered into in Arizona between defendants and Tri-County which culminated in the purchase by Tri-County of the mill ordered by defendants, and its lease by Tri-County. When acquired by Tri-County the mill had been installed at the mine by the manufacturer. The actual signing of the lease took place in the office of Tri-County in California.

Upon completion of the mill defendants accepted delivery, signed a certificate of satisfactory installation, and thereafter made no complaint concerning the equipment for a considerable period of time, during which Dynamics Research, Inc. became insolvent. During this period defendants made one payment of $9,900.00 under the terms of the lease to Tri-County, and three payments totaling $3,915.00 to Heller after its assignment, leaving a balance of $43,065.00 unpaid.

It appears that Tri-County, either in its own name or in the name of Federal Leasing Company, had been engaged for some time in acquiring personal property and leasing it for use in Arizona, but never had been authorized to do business in Arizona.

The trial court concluded that Tri-County was engaged in transacting business in Arizona in connection with the lease agreement sued on, without having qualified as provided in § 10–481, Ariz.Rev.Stats.Ann. 1956, and that under § 10–482, Ariz.Rev. Stats.Ann.1956, the lease contract was void and unenforceable in Arizona and, accordingly, unenforceable in New Mexico; further, that this defense could be asserted against Heller, Tri-County's assignee. Based thereon, Heller's action was dismissed and this appeal followed. Also, the trial court determined that defendants were not entitled to judgment on their counterclaim for amounts paid by them to Heller as rental. Defendant Stephens has perfected a cross-appeal from this holding.

The only issue presented for determination on the appeal is whether the trial court erred in concluding that acts leading up to the execution of the lease agreement and the subsequent performance of some of its obligations constituted "transaction of business" so as to make the agreement void. In this connection, it is Heller's position that the lease agreement was either a California transaction or a transaction in interstate commerce.

There is no question that Tri-County had not complied with § 10–481, supra. Neither can there be any question that if the acts of Tri-County amounted to the transaction of business in Arizona, such acts were void under § 10–482, supra, which reads:

"No foreign corporation shall transact business in this state until it has complied with requirements of § 10–481, and every act done prior thereto is void."

Appellant's principal claim of error is predicated upon the argument that the transaction in question was in interstate commerce and accordingly could not be controlled by § 10–482, supra, which applies only to intrastate dealings or business done in Arizona.

We see no escape from the conclusion that the transaction of business in Arizona is here present. While fully sympathetic with the rule, oft-stated by us, which dictates against construction of a statute so as to result in voiding of solemn obligations unless there clearly is no alternative, Hogue v. Superior Utilities, 53 N.M.

452, 210 P.2d 938 (1949); Transradio Press Service v. Whitmore, 47 N.M. 95, 137 P.2d 309 (1943); Niblack v. Seaberg Hotel Co., 42 N.M. 281, 76 P.2d 1156 (1938), we are convinced that the lease contract covering personal property located in and to remain in Arizona, entered into by Tri-County pursuant to its purposes and charter, and not as an isolated transaction in Arizona, is the doing of intrastate business and under the statute void ab initio. Sandia Development Corp. v. Allen, 86 Ariz. 40, 340 P.2d 193 (1939); Chattanooga National Building and Loan Association v. Denson, 189 U.S. 408, 23 S.Ct. 630, 47 L.Ed. 870 (1903); Thomas v. Birmingham Ry., Light & Power Co., 195 F. 340 (D.C.N.D., Ala., S.D.1912). Compare Ranch House Supply Corp. v. Van Slyke, 91 Ariz. 177, 370 P.2d 661 (1962); Glo Co. v. Murchison, 208 F.2d 714 (5th Cir.1954), cert. den. 348 U.S. 817, 75 S.Ct. 27, 99 L.Ed. 644; Loomis v. People's Const. Co., 211 F. 453 (6th Cir.1914); Butler Bros. Shoe Co. v. United States Rubber Co., 156 F. 1 (8th Cir.1907); Burroughs v. Southern Colonization Co., 96 Ind.App. 93, 173 N.E. 716 (1930); Normandie Oil Corp. v. Oil Trading Co., 139 Tex. 402, 163 S.W.2d 179 (1942).

■ The lease agreement here sued upon was a California contract. That is where the last act necessary to make it binding and effective was performed. Alexander Film Co. v. Pierce, 46 N.M. 110, 121 P.2d 940 (1942). However, having so determined, the solution of our problem does not automatically follow. As stated in Butler Bros. Shoe Co. v. United States Rubber Co., supra:

"* * * [A]ll interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce."

This language was quoted and approved in International Textbook Co. v. Pigg, 217 U.S. 91, 107, 30 S.Ct. 481, 54 L.Ed. 678 (1910).

■ The best and most comprehensive review of the cases involving fact situations in any sense comparable to the one here present is to be found in Filmakers Releasing Organization v. Realart Pictures of St. Louis, Inc., 374 S.W.2d 535 (St. Louis, Mo. Ct.App.1964). In that case it was concluded that the plaintiff was not doing business in Missouri. However, the reasoning of the cases cited there, in our opinion, unerringly dictates a conclusion here that Tri-County was doing business in Arizona. United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 109 S.W. 567 (1908) is probably closest to our situation on its facts. In that case, the interstate aspects of the transaction were not preserved simply because the lease contract which resulted in an importation of goods continued in force. The protection afforded by the commerce clause to interstate commerce does not continue over a long period of time to shelter from state regulation essentially local activities relating to imported property even though these activities incidentally serve to enhance interstate commerce. Union Brokerage Co. v. Jensen, 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227 (1944). Although Tri-County and Heller did not furnish any service or maintenance in Arizona, neither did the mill ever cross any state lines. All in all, we perceive of nothing in the dealings between the parties excepting only the fact that the lease agreement was executed in California by citizens of New Mexico and California covering Arizona property which can be pointed to in support of an argument that interstate commerce was involved. That these facts are not controlling is made evident by the cases cited above. For a recent discussion of some of the problems, see Eli Lilly & Co. v. Sav-On-Drugs, Inc., 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), affirming 57 N.J.Super. 291, 154 A.2d 650 (1959), aff'd 31 N.J. 591, 158 A.2d 528 (1960).

■■ Moreover, the burden was on defendants to establish not only the transaction of intrastate business in Arizona by Tri-County, but that Tri-County was engaging in a "reasonably substantial course of business" in Arizona, Ranch House Supply Corp. v. Van Slyke, supra, or "in an enterprise of some permanence and durability," Sandia Development Corp. v. Allen, supra, and that it was conducting "some substantial part of its business and not merely a single act" within the state. Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 234 P. 818 (1925). The finding to the effect that defendants had met this burden is amply supported.

We perceive that there is a difference between acquiring property preparatory to going into business or in leasing property owned and not needed in a business, from the situation where, as here, property was acquired for leasing purposes and was leased as an essential part of the business for which the corporation was chartered. See United Shoe Machinery Co. v. Ramlose, supra; State ex rel. Hays v. Robertson, 271 Mo. 475, 196 S.W. 1132 (1917); Clare & Foster, Inc. v. Diamond S. Electric Co., 66 Ohio App. 376, 34 N.E.2d 284 (1940); Davis v. United Shoe Repairing Mach. Co., 92 S.W.2d 1107 (Tex.Civ.App. 1936); United Shoe Repairing Mach. Co. v. Carney, 116 W.Va. 224, 179 S.E. 813 (1935). See also Annot., 59 A.L.R.2d 1131 (1958); Annot., 35 A.L.R. 917 (1925); 17 Fletcher, Cyc. of Corps., § 8487 (Perm.Ed.Rev.Vol. 1960); 23 Am.Jur., Foreign Corps., § 373. From the Robertson case, cited above, we quote:

"[W]e do not think that any foreign corporation can through a period of ten years engage in this state in the business of renting out its property at an annual rent reserved, and of collecting that rent yearly throughout rental periods of six years, without complying with our statutes licensing foreign corporations."

■■ In this connection it should be kept in mind that we are construing Arizona law, and in doing so are bound by Arizona

cases which have passed upon similar problems. As we read those cases, we are impressed that something more than isolated or occasional business dealings must be found before it will be held that transactions entered into by foreign corporations not authorized to do business in Arizona are void. Ranch House Supply Corp. v. Van Slyke, supra; McKee v. Stewart Land & Live Stock Co., 28 Ariz. 511, 238 P. 326 (1925). That the transaction here would be held to be void under § 10–482, supra, is clearly indicated by what is said by the Arizona Supreme Court in Neiderhiser v. Henry's Drive-In, Inc., 96 Ariz. 305, 394 P.2d 420 (1964); National Union Indem. Co. v. Bruce Bros., 44 Ariz. 454, 38 P.2d 648 (1934); Monaghan & Murphy Bank v. Davis, supra. See also Worcester Felt Pad Corp. v. Tucson Airport Authority, 233 F.2d 44, 59 A.L.R.2d 1121 (9th Cir.1956).

Chattanooga National Building and Loan Association v. Denson, supra, involved a question of the rights of plaintiff, a Tennessee corporation, not qualified to do business in Alabama, to sue in Alabama to foreclose a mortgage drawn in Tennessee and by its express terms payable there, but covering Alabama land. Without deciding whether the situs of the contract was Tennessee or Alabama, the court concluded that the Alabama law applied and the mortgage could not be foreclosed.

In the course of the opinion, the court had the following to say:

"Counsel has discussed at some length the situs of contracts and by the law of what place their obligation is determined. We think, however, that the discussion is not relevant. It withdraws our consideration from the constitution and statute of Alabama; and, it is manifest, the contention based upon it, if yielded to, would defeat their purpose. * * * The application of Denson was presumably solicited as other applications were, and if what was done in pursuance of it did not constitute doing business in the State, the effect would be, as expressed by the Circuit Court of Appeals, that petitioner

'and other foreign associations engaged in the same business of loaning money on real security, may safely flood the State of Alabama with soliciting agents, make all the negotiations for loans, take real estate securities therefor, and fully transact all other business pertaining to their corporate functions as though incorporated therein, and yet neither be obliged to have a known place of business or any authorized agent within the State, nor pay any license tax or fee, as required of nonresident corporations doing business therein.' "

Applying the rules stated above to the facts here, we must conclude that the leasing of the mill located in Arizona, and to remain there, constituted the transaction of business in Arizona, and the contract is accordingly void. This is true, notwithstanding the fact the contract was made in California. The contract implicitly and necessarily carried with it certain incidents pertinent to Arizona, and Arizona alone, which make inescapable the conclusion that transaction of business in Arizona was present. The trial court did not err in holding the contract void and unenforceable.

We next consider the cross-appeal, wherein error is predicated upon the trial court's refusal to grant judgment for return of the amounts paid to Heller under the void agreement, as sought in appellees' counterclaim.

Cross-appellant asserts that since the lease was void, all amounts paid thereunder to Heller should be restored; also, that a complete failure of consideration has resulted and, accordingly, he is entitled to restitution of amounts paid to Heller. No claim is advanced for amounts paid to Tri-County, Heller's assignor.

Heller first answers that since the transaction was one in interstate commerce, the lease was valid and cross-appellant has no basis for seeking return of the money paid. The conclusion we have reached on the appeal is contrary to Heller's position and sufficiently disposes of this argument.

As its next answer, Heller asserts the presence of an equitable estoppel in its favor. In support of its position, our attention is directed to finding of fact No. 12 made by the trial court, which reads:

"Defendants accepted delivery of machinery, signed a certificate of satisfactory completion and failed for a long period of time to make any complaint to Federal Leasing Company or Plaintiff as to the condition of the equipment, during which time the party responsible for the faulty design became insolvent."

We see nothing in the finding or in the conclusion of the court that recovery on the cross-complaint was being denied because of equitable estoppel. As a matter of fact, the court's action in denying cross-appellant the relief sought by him is not based on any findings made by the court as required by our rules of appellate procedure. As stated in Star Realty Co. v. Sellers, 73 N.M. 207, 209, 387 P.2d 319, 320 (1963), "a judgment cannot be sustained on appeal unless the conclusion upon which it is based finds support in the findings of fact." See, also, Thompson v. H. B. Zachry Co., 75 N.M. 715, 410 P.2d 740 (1966). It follows that the cause must be remanded so that the trial court can make the necessary findings upon which to base a conclusion in connection with issues presented by the cross-complaint. Isaac v. Seguritan, 66 N.M. 410, 349 P.2d 126 (1960).

In this connection, without in any way intending to indicate that the contract sued upon by Heller is or is not void for all purposes, we would note that the relief sought by cross-appellant is restitution of amounts paid by him on the lease contract. The issue is not one of whether equitable estoppel should or could intervene as a defense in a suit for damages for breach of warranty in the agreement. State National Bank of El Paso, Texas v. Cantrell, 47 N.M. 389, 143 P.2d 592, 152 A.L.R. 1216 (1943), relied on by cross-appellant, was such a case. That void agreements may give rise to certain equitable rights under proper circumstances is not open to doubt. 3 Willis-

ton on Contracts, § 536 (3d Ed. 1960); 6A Corbin on Contracts, § 1534 (1962); 17 Fletcher, Cyc. of Corporations, § 8519 (Perm.Ed.Rev.Vol.1960). Compare, Hogue v. Superior Utilities, 53 N.M. 452, 210 P.2d 938 (1949); Cochran v. Bise, 197 Va. 483, 90 S.E.2d 178 (1956). However, as above noted, as the record stands we are unable to determine if the trial court correctly ruled on cross-appellant's counterclaim when it denied relief thereon.

The judgment appealed from is affirmed insofar as it denies recovery to Heller. The judgment denying recovery on the counterclaim is reversed and remanded to the trial court with instructions to proceed in a manner consistent herewith.

It is so ordered.

CHAVEZ, C. J., and CARMODY, J., concur.